JOHN R. HUBBARD AND OTHERS V. A. G. HORNE.

The exemption from execution, of lands granted to those who were in the "battle of San Jacinto, and other battles," under the Act of the 21st of December, 1837, is limited to the life-time of the grantee, and upon his death, it ceases, and the property becomes assets in the hands of his administrator.

The 45th section of the Act of the 20th March, 1848, concerning the estates of deceased persons, requiring the chief justice to set apart, for the use of the widow and children, all such property as may be exempted from execution or forced sale, by the constitution or laws of the State, &c., does not embrace lands granted "to those who were in the battle of San Jacinto, and other battles."

It cannot be regarded a statute in *pari materia*, with the general laws exempting the homestead, and other property of the citizen, from forced sale ; and cannot properly be taken and construed together with them, as constituting one statute, upon the subject of which they treat, or as parts of one and the same system.

Where B. agreed, in consideration of past services rendered him by A., to secure to him a tract of land, on which A. had filed a borrowed certificate, by filing on the same with his own, and he did so, and A. went into possession, and improved it, and was on it at the death of B.: *Held*, that the heirs of B. could not recover the land.

APPEAL from Burnet.    Tried below before the Hon. Edward H. Vontress.

This was an action of trespass to try title, brought by John R. Hubbard and Eliza Hubbard, his wife, Robert Flippin and his wife, Mary Flippin, and Sarah Vandeveer and Emma Vandeveer, by the said John R. Hubbard, their next friend, (the said Eliza, Mary, Sarah, and Emma, being heirs at law of Logan Vandeveer, deceased,) against A. G. Horne, to recover a tract of land containing about 105 acres ; being a part of land granted to the said Logan Vandeveer, as his San Jacinto bounty-warrant. The defendant pleaded not guilty.

The heirship of the plaintiffs, and the original title of the land to Logan Vandeveer, as stated, were admitted.    Robert Adams purchased the land in controversy, after the death of Logan Vandeveer, at a public sale, made by the administrators of his

estate, under an order of the County Court, requiring the said administrators to sell the same for the payment of the debts of the estate. This tract was not included among the property set apart by the chief justice, to Vandeveer's heirs, as exempt from forced sale. The administration on the estate, was still open and undetermined; and at the sale of the land, the plaintiffs forbade the sale, and claimed it as their property. On the 19th day of March, 1856, the administrators made title to Adams, who paid the amount of his bid therefor, and the sale was approved by order of the County Court. The defendant claimed under a deed from Adams, dated the 7th day of November, 1856.

It was proved by the defendant, that during the lifetime of Vandeveer, Adams was in possession of the tract, holding it by a certificate filed thereon, which he had borrowed: and Vandeveer stated to the witness, that in consideration of many favors he had received from Adams, he intended to save that land for Adams; that he intended "to lift" a hundred acres of his file off the Watts tract, in order to file the same on the Adams tract. Vandeveer also stated his intention to furnish Adams with cattle and hogs, and other assistance; and the deceased requested the witness to inform Adams of his intentions; with which request he complied. Adams remained on the tract, up to the death of Vandeveer. This conversation occurred during the winter, in 1855.

The plaintiff proved by a witness, that Adams, after Vandeveer's death, told him that he was living on the land; had intended to save the land as his pre-emption, but was unable to improve it; that he had permitted Vandeveer to locate it, and he was to live upon it during his lifetime; Vandeveer was to have furnished him a stock of hogs and cattle, and help him to improve the land; and at his death, Vandeveer was to have the land, and all the improvements.

The court gave to the jury, the following instruction, asked by the defendant: that an agreement between Adams and Vandeveer, that, in consideration of services which had been rendered by Adams to Vandeveer, the former should have the land

in controversy, in pursuance of which, he went into possession in the life-time of the latter, commenced making improvements, and continued in possession up to the time of Vandeveer's death, would entitle the defendant to a verdict.

Verdict and judgment for the defendant.

*W. H. Bowers* and *S. H. Renick*, for the appellants.

*Hancock & West*, for the appellee.

WHEELER, C. J.—The principal question to be considered, is, whether the property in question, was assets in the hands of the administrator of the deceased grantee. The land was acquired under the provisions of the Act of the 21st of December, 1837, "granting lands to those who were in the battle of San Jacinto, and other battles," (Hart. Dig. 593,) which provides, (sec. 4,) "that the lands granted by this act, shall not be subject to sale, or alienation, mortgage, or execution, during the life-time of the person, to whom such warrant, or patent, shall be granted." The exemption, is expressly limited to the life-time of the grantee, so that upon his death, it would cease, and the property become assets in the hands of his administrator, unless prevented by the operation of the 45th section of the Act of the 20th of March, 1848, concerning the estates of deceased persons. (O. & W. Dig., Art. 753.)

The proper construction of this section of the statute, has been the subject of examination in several cases. (James v. Thompson, 14 Texas Rep. 463; Green v. Crow, 17 Id. 180; 18 Id. 102.) It has been considered, that its object was to afford a protection to the family, (14 Texas Rep. 463,) and this object it seems designed to accomplish, in entire coincidence with the policy of the general laws, exempting certain property from execution, or forced sale. Its object seems to have been, to carry out and effectuate, the beneficent object of those general laws, exempting the homestead, and certain other enumerated property, from forced sale, which embraced and extended their

benefits alike to all, having regard to the necessities and welfare of persons and society, rather than the creating of any distinctions, on account of the proprietorship of a particular description of property.   These laws were dictated by the same policy, and enacted in the same spirit.   They had regard solely to the good of persons, and the general good of society.   They were general laws embracing the whole community.   They were not designed to confer exclusive privileges, or to favor any particular class of persons, but their benefits were designed equally for all who might be in a situation to require them.

But the act under which the plaintiffs claim the property in question, (Hart. Dig., Art. 1881,) appears to have been dictated by a different policy, and enacted in a different spirit.   It was not general in its operation, but special; limited to a certain class of persons, and intended for their sole and exclusive benefit.   It was designed to confer a bounty upon a favored few, on account of their public services, and perhaps, as much to confer a well deserved honorary distinction, as a pecuniary benefit; and hence the limitation of the exemption, to the life-time of the person.   It cannot be regarded as a statute in *pari materia* with the general laws exempting the homestead, and other property of the citizen, from forced sale; and cannot, we think, properly be taken and construed together with them, as constituting one statute upon the subject of which they treat, or as parts of one and the same system.

We therefore conclude, that the property in question, was not embraced by the provision of the 45th section of the Act of 1848, before referred to.   We do not think it was within the contemplation of the legislature, when they enacted that statute. We suppose they had in view only the laws exempting property from forced sale, which were general in their operation, and not any provision of any special law, enacted for the exclusive benefit of certain individuals, and limited in its operation to that particular class of persons.   The act was general, and intended, we think, to operate only on property exempt by general laws.   It may be true, as insisted, that credit was not given upon the

faith of this property, but that would not prevent it from becoming assets. That may be true, in fact, of any other property, owned by the intestate at his death. It would be true of property which he acquired after the credit was given. But the property would not, on that account, be any the less, assets in the hands of the administrator.

It is objected to the judgment, that the court erred in the charge given at the instance of the defendant, touching the supposed sale, by the intestate to Adams. But it is not perceived, that there is error in this charge. There may not have been evidence sufficient to support a verdict for the defendant, upon this ground of defence. But it does not appear, nor is it at all probable, that this was the ground upon which the jury found their verdict. There was evidence amply sufficient to support the verdict, upon the ground of title in the defendant, through the sale by the administrators.

We are of opinion, that there is no error in the judgment, and it is affirmed.

Judgment affirmed.