DIMAS R. PONCE *v.* A. F. McWHORTER ET AL.

1. RECEIPT—PAROL RESCISSION OF SALE OF LAND.—A receipt executed by the vendee acknowledging the receipt of a sum of money in full of sums by him laid out for payment of surveying fees, &c., which in the deed to the land formed the consideration of the sale, is not evidence, of itself, of a resale or rescission of the contract of sale,

but it is admissible with other testimony to sustain a parol resale or rescission.

2. PRACTICE—ERRONEOUS RULINGS UPON IMMATERIAL ISSUES.—That exceptions to defective pleas were not sustained, is not error, where the court on the trial took no notice of such pleas in submitting the case to the jury.

3. PAROL RESCISSION OF SALE OF LAND.—A parol rescission of a sale of land will be decreed upon evidence on which the court would enforce a parol sale of land.

4. PAROL SALE OF LAND—SPECIFIC PERFORMANCE.—Cases in this court are numerous recognizing parol sales of land and enforcing them, where the purchase-money has been paid, possession taken with consent of the vendor, and improvements made on the land without his objection.

5. SAME—STATUTE OF FRAUDS.—Where one of two contracting parties has been induced or allowed to alter his position on the faith of the contract to such an extent that it would be fraud on the part of the other party to set up its invalidity, courts of equity hold that the clear proof of the contract and of the acts of the part performance will take the case out of the statute of frauds, if the acts of part performance are clearly referable to the parol agreement.

6. SAME.—That the vendee in such parol contract has sold to others who have made improvements under such purchase, rather increases the equity in favor of enforcing the parol contract.

8. POSSESSION OF LANDS AS NOTICE.—That a vendee in a parol contract for sale of land, sold the land, and his vendee entered upon the land and erected improvements during the life of the original vendor, will be held as evidence of an entry and erection of improvements with consent of such original vendor, in a suit by his heirs for the land.

APPEAL from Madison. Tried below before the Hon. James R. Burnet.

*H. H. Boone*, for appellant.—Zoraster Robinson was the original grantee of the land, and all parties claim under or through him. The deed from Robinson to Richardson was made on the 17th of October, 1835, duly acknowledged August 8, 1837, filed for record October 16, 1840, and recorded November 22, 1840, in the county of Montgomery, within the boundaries of which the land then was embraced. The defendants claim under junior title from Robinson, made subsequent to the recording of the deed from Robinson to

Richardson. But they seek to avoid the deed to Richardson on three grounds. They claim (1) that on the 13th of January, 1841, there was a rescission of the sale made by Robinson to Richardson, and a reconveyance of the land by Richardson to Robinson; (2) that there was a failure of consideration in the original sale from Robinson to Richardson; and (3) that there was fraud in the sale from Robinson to Richardson.

These propositions they seek to establish by the introduction of an instrument purporting to have been executed by Richardson on the 13th of January, 1841, [which reads as follows: "January 13, 1841.—This day received of Zoraster Robinson $75 in full for money paid by me in 1835 at San Felipe de Austin in clearing out said Robinson's headright league of land, he (said Robinson) having paid the government dues on the same. Signed, DANIEL L. RICHARDSON,"] and by the testimony of Zoraster Robinson himself.

The pleas setting up these defenses were excepted to by plaintiff; his exceptions were overruled and proper bills of exceptions were taken. The introduction of the receipt as evidence and the depositions of Robinson were objected to by plaintiff; his objections overruled and bill of exceptions taken. The same question arose in the charge of the court, and was excepted to, and bills of exception taken. A special charge was asked embodying plaintiff's view of the law on these questions, which was refused, and bill of exceptions taken. The assignment of errors presents all of these rulings of the judge below as errors for which judgment should be reversed.

We respectfully contend, for appellant, that the deed from Robinson to Richardson cannot be avoided on any of the grounds taken by defendants, and that it was the oldest conveyance, was first recorded and conveyed the land, and as there are no questions of prescription involved. the judgment of the court below on the law and facts should have been for plaintiff.

1. There was no rescission of the sale from Robinson to Richardson. The deed from Robinson to Richardson was made in 1835; the date of the pretended rescission is January 13, 1841. The statute of frauds was passed January 18, 1840; took effect March 16, 1840. (Paschal's Dig., p. 409.) It was invoked by proper pleas by plaintiff. The alleged receipt from Richardson to Robinson cannot be construed into a memorandum in writing for the sale of land, (Patton v. Rucker, 29 Tex., 402; Bracken v. Hambrick, 25 Tex., 412; Taylor v. Ashley, 15 Tex., 53,) nor as a rescission of a sale of land, because such a "contract for a rescission of a sale of land" would be as much obnoxious to the provisions of the statute of frauds, and would require the same evidence under the statute to set it up as would be required for the sale of land. (Dial v. Crain, 10 Tex., 444, 454.) A verbal agreement to destroy a deed, or even its destruction, will not reinvest the title. (Van Hook v. Simmons, 25 Tex. Supp., 325.) The receipt in itself being inadmissible as evidence of a sale or a rescission of a sale of land, clearly the testimony of Robinson was inadmissible and insufficient to render it admissible and sufficient; nor was this evidence admissible to show a failure of consideration in the sale from Robinson to Richardson. This sale was witnessed by a deed under seal, properly executed, acknowledged, and delivered. It passed the title to the land and acknowledged the consideration. Robinson and those claiming under or through him were estopped from denying its recitals. (Gould v. West, 32 Tex., 339, 354; 2 Best on Ev., sec. 542, and authorities there cited; 1 Geenl. Ev., secs. 24–26, 211; Crabb's Law of Real Prop., sec. 2432, et seq.; 2 Smith's Lead. Cas., 582, et seq.)

"The true doctrine is stated in Grout v. Townsend: that where a deed acknowledges the receipt of a consideration, the grantor and all claiming under him are estopped from denying one was paid. They may disprove the payment for the purpose of recovering the consideration-money, but they

cannot do so for the purpose of destroying the effect and operation of the deed." "It cannot be contradicted or varied by parol so as in any way to affect the purpose of the deed, that is, its operation as a conveyance." (3 Wash. on Real Prop., pp. 328, 85, *et seq.;* Grout *v.* Townsend, 2 Hill, 554, and 2 Denio, 336; Philbrook *v.* Delano, 29 Maine, 413; Rockhill *v.* Spraggs, 9 Ind., 33, and note on p. 34 and the authorities therein cited.)

Nor was it admissible to show fraud, (1) because defendant had not sufficiently alleged fraud in the original transaction, that is, in the sale by Robinson to Richardson; (2) because if fraud in that sale was not properly and sufficiently alleged as existing or having been committed at the time or as part of the original transaction, evidence of any subsequent act of omission or commission on the part of Richardson was not admissible. Giving the fullest weight possible to the testimony, it amounts to this, and nothing more, if it be true: that there was a partial failure of consideration, that Richardson did not pay the government dues. This, if he did not do, he ought to have done; if he failed to do so, it gave Robinson a right of action against Richardson, in which he might have recovered the amount. But can such failure relate back to the original transaction, and render that fraudulent which was otherwise and at the time a good and valid sale? Suppose that Robinson had brought suit against Richardson for the land and for a cancellation of the deed upon the ground of fraud, and his only proof of fraud had been that Richardson had failed to pay this amount of money: could he have recovered? But it is contended that Robinson's testimony shows that the receipt given in 1841 was represented by Richardson and intended by him to be a rescission and reconveyance to Robinson of the land, and that this misrepresentation was a fraud, and relates back to and vitiates the original transaction. This is reasoning in a circle. It was not competent by parol evidence to vary and contradict the plain written language of the receipt. It most certainly was

not competent to show that it was intended as a rescission of the original sale and a reconveyance of the land. And how can these misrepresentations, if in truth they were made, be made to relate back to and taint with fraud the original transaction? We submit that this evidence should all have been excluded, but that after being admitted by the court, over the objections of plaintiff, the charge of the court upon the question of fraud was unwarranted, confused, calculated to mislead the jury, and did mislead them.

It is contended, too, that the equities are all in favor of defendants, and therefore they should have recovered. Let us analyze this pretension. Richardson bought on October 17, 1835, when a deed absolute was executed and signed by Robinson in the presence of witnesses and delivered to Richardson. About two years afterwards, in 1837, this deed was acknowledged by Robinson before an officer authorized to take acknowledgments of deeds, as shown by the certificate of the officer, and subsequently placed of record by Richardson in the proper county. Several years after this these defendants purchased the land conveyed in this deed from Robinson. They had constructive notice of the sale by Robinson to Richardson. This was sufficient. But if it were necessary, we think it can be shown from the statement of facts that they had actual notice. With one of them, it seems, Robinson left the pretended receipt from Richardson to Robinson as evidence that the sale from Robinson to Richardson had been rescinded, and to be used in case there should be assertion of title by Richardson or any one claiming under him. This was later, of course, than January 13, 1841, the date of the receipt. These parties knew, or should have known, (because ignorance of law excuses no one,) that the pretended receipt was not such an instrument of writing or memorandum in writing as would divest the title of the land out of Richardson and revest it in Robinson. He who trusts most must lose most. These defendants trusted entirely to Robinson's statements, which were contradicted by

the records and by the law.   And was Robinson in any better condition before he sold to these defendants than were they after they purchased from him?   Could he invoke any equities before the sale to them which they could not invoke after their purchase?   Equity follows the law.   The laws say there was no rescission of the sale from Robinson to Richardson; that he cannot show want of consideration by parol testimony in order to avoid a deed absolute, under seal, acknowledging a consideration; that though it might be avoided for fraud, no fraud is alleged or proven in the original transaction.   If Robinson ever had any equities, he has lost them by his failure to assert and enforce them, when and in the manner the law required.   The law, and equity as well, favors the diligent, and not the slothful.

Suppose that Richardson, holding the deed of Robinson as he did, had sold the land to a third party: could Robinson have recovered from him or defeated him in a suit for the land upon the case made out by the appellees in the record? But Ponce, the appellant, was not a purchaser from Richardson, but was his grandson, his heir, his legatee; and the case is, therefore, different!   Wherefore?   So far as the loss and injury to Ponce are concerned, there is no difference.   Richardson died holding this deed from Robinson, and believing that he owned this land.   In the partition of the estate this land was allotted to appellant.   Had Richardson died without a will, Ponce, as his grandson and one of his heirs, would have come in for a distributive share of the estate, and this land might still have been allotted to him.   The estate of Richardson has been fully partitioned and distributed among the heirs.   If he loses this land he loses an interest in his grandfather's estate of the value put upon this land on partition and distribution of the estate, and all through the laches, the failure and neglect of Robinson to assert his equites, if any he ever had, at the proper time and in the proper manner. Shall this wrong to Ponce be now permitted to be done, when more than a third of a century has elapsed since the original

transaction, and the lips of one of the parties thereto has been closed by death, so that he cannot be heard to tell his side of the story? The defense in this case was an able and ingenious effort on the part of learned counsel who represented them below to avoid the effect of the statute of frauds. To allow it to succeed, would be in effect to repeal that statute by the judgment of the court.

*James A. Baker*, for appellee.

GOULD, ASSOCIATE JUSTICE.—In October, 1835, Zoraster Robinson conveyed the west half of his headright league to Daniel L. Richardson, the deed, dated at San Felipe de Austin, reciting that it was made "in consideration of the sums of money by Daniel L. Richardson paid for commissions, office, secretaries and surveyors, and government fees on a league of land granted to me as a colonist by the commissioner of government, Robert Peebles, and for other sums paid and services rendered, in all amounting to one hundred and fifty dollars." This deed was acknowledged by Robinson in August, 1838, and was recorded in October, 1840. In 1867, appellant Ponce, the grandson and one of the devisees of Richardson, brought this action of trespass to try title against sundry parties in possession of said half league, claiming under conveyances from Robinson, made subsequent to his deed to Richardson.

The defendants answered, amongst other things, that Richardson did not, in fact, pay the government dues, as he should have done, but that Robinson, in September, 1838, was compelled to pay them himself to protect his land, and that afterwards, in January, 1841, Richardson, in consideration of that fact and of $75 then paid him by Robinson, had agreed to rescind their trade, and as evidence thereof executed the following instrument: "January 13, 1841.—This day received of Zoraster Robinson $75 in full for moneys paid by me in 1835 at San Felipe de Austin in clearing out said

Robinson's headright league of land, he (the said Robinson) having paid the government dues on the same. DANIEL L. RICHARDSON." Whilst these facts were alleged as invalidating the deed to Richardson, and the foregoing instrument was claimed to be sufficient evidence of a rescission or sale under the statute of frauds, it was further claimed that, after this instrument was executed, Robinson took possession of said half league in pursuance of said rescission, claimed and controlled it, paid taxes on it, and sold it to the defendants, who, each of them, made valuable improvements; no objection thereto being made by Richardson, who, they allege, had abandoned all claim. The fact of the rescission or resale is testified to, with full details of the circumstances, by Robinson. There is ample evidence that thereafter Robinson, whose residence and improvements were on the east half, openly claimed the west half, making sales to the defendants, who went into possession and made valuable improvements. One of Robinson's vendees took possession and improved in 1843 or 1844, some five years before the death of Richardson. The sales to the other defendants were later, after 1849, when Richardson died in Sabine county, where he resided. There is no evidence of any claim or acts of ownership by him after 1841, but after his death his executors inventoried the land in controversy, and in the partition of the large landed estate left by him it was allotted to his grandson, the plaintiff, then a minor, quite young. The trial resulted in a verdict and judgment for defendants, and the plaintiff has appealed.

Under the charge of the court the defendants, in order to entitle themselves to a verdict, were required to establish the verbal rescission as alleged, that Richardson thereafter abandoned his claim to the land, and Robinson afterwards notoriously asserted and exercised ownership and put parties in possession of it, who erected valuable improvements.

The court treated the receipt or instrument executed by Richardson in 1841 as insufficient evidence of a rescission or

resale under the statute of frauds, but admitted it as evidence tending to establish the alleged verbal contract. Taken in connection with the recitals of the deed as to its consideration, the receipt was certainly strong evidence of that alleged resale, and was properly admitted in evidence, although insufficient of itself to satisfy the statute.

Counsel for appellant complain that the court erred in overruling exceptions to some of the pleas of defendants. But if this be conceded, it was an error which did not prejudice the plaintiff's cause, for the court in its charge did not submit to the jury any issue under these pleas. There are, it is true, in the charge some general expressions on the subject of fraud, but they are not such as could have led the jury to find for defendants on the ground only that Richardson had failed to perform what he had undertaken, and that the consideration of the deed had failed. The issue submitted to the jury was that growing out of the alleged verbal rescission or resale, and of the equities which had grown out of improvements made on the faith thereof. Assuredly the fact of the original sale by Robinson to Richardson, and that the second contract was regarded by them as a rescission of the first, would not prevent its enforcement, if the equities were such that it would have been enforced as a mere verbal sale of land.

The cases in this court are numerous in which verbal sales of land have been recognized as valid, and enforced, where the purchase-money has been paid, possession taken with the consent of the vendor, and improvements made without his objection. (Garner *v.* Stubblefield, 5 Tex., 552; Dugan's Heirs *v.* Colville's Heirs, 8 Tex., 126; Ottenhouse *v.* Burleson, 11 Tex., 87; Whitson *v.* Smith, 15 Tex., 36; Neatherly *v.* Ripley, 21 Tex., 434; Hubbard *v.* Horne, 24 Tex., 270; Taylor *v.* Rowland, 26 Tex., 293; Hendricks *v.* Snediker, 30 Tex., 306; Robinson *v.* Davenport, 40 Tex., 341; Ann Berta Lodge *v.* Leverton, 42 Tex., 31; Castleman *v.* Sherry, 42 Tex., 59; Willis *v.* Matthews, 46 Tex., 483.)

The ground upon which such verbal sales are enforced, notwithstanding the statute, is the prevention of fraud. (42 Tex., 31, *supra*.) The rule is thus stated by Justice Clifford in a recent case: " Where one of the two contracting parties has been induced or allowed to alter his position on the faith of such contract to such an extent that it would be fraud on the part of the other party to set up its invalidity, courts of equity hold that the clear proof of the contract and of the acts of part performance will take the case out of the operation of the statute, if the acts of part performance were already such as to show that they are properly referable to the parol agreement." (Williams *v.* Morris, 5 Otto, 457.)

The change of circumstances growing out of valuable improvements has been assumed to be such as to make it difficult or impossible to restore the vendee to his position. That difficulty is rather increased than diminished where the vendee has, on the faith of his contract, made sales to others, and the improvements have been made by them instead of by him. We cannot see that the equity of the defendants is affected by the fact that the improvements were made not by Robinson, but by parties claiming under him.

The instructions on the subject of verbal sales asked by plaintiff required Robinson to have taken possession and made improvements in person or by tenants, and that it should have been done in the lifetime of Richardson and with his knowledge. The evidence was abundant and uncontradicted that possession had been taken and improvements made by Robinson's vendee during Richardson's lifetime. Whether he actually knew it or not, he was chargeable with notice, and could only have remained ignorant by a failure to give proper attention to his lands. The errors of fact and of law embodied in the charges asked justified their refusal.

We are satisfied that the court committed no material error in the mode in which the case was submitted to the jury, and

that the verdict was in accordance with the evidence and with the justice of the case.

The judgment is accordingly affirmed.

AFFIRMED.