### WINGART v. BAXTER et al.
No. 9388.

Court of Civil Appeals of Texas. Galveston.
Jan. 28, 1930.

Rehearing Denied July 3, 1930.

On Motion to Correct Findings July 28, 1930.

Jno. T. Vance, of Edna, for appellant.

Rose & Sample and J. W. Wheeler, all of Edna, for appellees.

GRAVES, J.

This concededly correct general statement is copied from the briefs of the parties:

"This is a suit by T. J. Baxter and wife, Mary Baxter, plaintiffs, against W. H. Wingart, defendant, seeking to recover $1,000.00 as separate property of plaintiff, Mary Baxter, upon a parole agreement, whereby, according to plaintiffs' amended petition, defendant was to pay her that sum 'if she would make no further claim in and under' a certain unexpired lease on real estate, 'and with her husband turn over to him their possession thereunder' of the leased premises O a certain 'residence, store building and pasture or trap.' Plaintiffs claimed to own as their homestead, such unexpired term, which ran from March 22; 1927, to May 8, 1929, a little more than two years.

"Plaintiffs allege a tender of, and do tender a written transfer, signed by themselves, dated and acknowledged March 7, 1929, (the same date as the Amended Petition) where in they purport to 'sell, transfer and assign to W. H. Wingart of the County of Jackson, State of Texas, all the claims, rights, titles and interests which we (T. J. Baxter and wife, Mary Baxter) on the 22nd day of March, 1927, or at any time thereafter had of, in, to or under a certain written lease agreement executed by Bettie C. Ward, individually,' etc., making in connection therewith this statement:

" 'Plaintiffs state that while they did not obligate themselves to agree to execute in favor of the said W. H. Wingart an assignment or transfer of their rights under their aforesaid lease in writing, nevertheless they have been ready, able and willing at any time if called upon by defendant to execute and deliver to him such an assignment in writing thereof, and they here now tender to him herewith a duly executed written assignment of their rights under said lease as such rights existed at the time of the aforesaid sale by the assignee.'

"The $1,000.00 was to be paid in cash, and interest is asked for at 6% from March 22, 1927. Though it does not appear from the petition itself, the $1,000.00 was in fact claimed as a premium on the lease, as $50.00 per month rental called for in the lease had to be paid to the owners and all the other obligations thereof had to be taken care of by the defendant.

"The defendant filed a general demurrer to plaintiffs' petition, also a special demurrer on the ground that plaintiffs' suit is brought upon a parol contract made in violation of the Statute of Frauds. Defendant also denied the truth of plaintiffs' allegations and set up as defense the Statute of Frauds, and by way of cross-action against the plaintiff, T. J. Baxter, set out that said Baxter was indebted to him upon a surety debt for $1,425.56 and interest and costs of suit, and upon an open account and upon three checks, such debts as a whole aggregating $2,227.35.

"Plaintiffs, by supplemental petition, demurred to defendant's answer on three grounds.

"I. That defendant had occupied and used the premises and was now estopped to deny his liability to pay Mrs. Baxter the $1000.00.

"II. That this suit is to recover a debt due Mrs. Baxter as her separate property, and that defendant's cross-action against T. J. Baxter was therefore not maintainable.

"III. This is in substance the same as II.

"Plaintiffs also made a general denial and set up the Statute of limitation to defendant's cross-action.

"The court, trying the cause without a jury, overruled the general demurrer and special exceptions of defendant, sustained exceptions II and III of plaintiffs, and on the evidence, rendered judgment for the plaintiff, Mrs. Mary Baxter, for $1000.00 as her separate property, with interest thereon from January 1, 1928, at 6% per annum. The defendant excepted, and gave notice of appeal."

■ The appellees' motion to strike out appellant's assignments and dismiss his appeal, on the ground that he neither by request procured the filing of findings of fact and law nor filed a motion for new trial below, taken for consideration with the case, comes too late, having been filed more than thirty days subsequent to the filing of the transcript here. Rule 8 for Courts of Civil Appeals. If it had come in time, however, it could not have been sustained; Craver v. Greer, 107 Tex. 356, 179 S. W. 862.

■ Their objections, however, to the consideration of his propositions Nos. II, VII, IX, and X, are sustained, these being that:

"Number II is not germane to assignment I on which it is based, in that it presents the tendered written transfer of the lease of March 7, 1929, as being ineffective because self-serving and insufficient to take the sued-upon contract out of the statute of frauds, whereas the assignment merely asserts that the contract declared upon is violative of the statute of frauds because not in writing. Rule 30 for the Courts of Civil Appeals.

"Number VII, generally alleging that a parol contract violative of the statute of frauds should not be enforced, if at all, except upon full, clear, and satisfactory proof, gets nowhere, because a mere abstraction—Rule 30, supra; Wright v. Maddox (Tex. Civ. App.) 286 S. W. 607.

"Numbers IX and X are based on assignment V, which was not filed below and is submitted here as involving fundamental error, but does not do so, since it merely alleges a variance between the pleadings and the proof that requires the appellate court to search the statement of facts to decide the question the assignment propounds—Swinson v. Thomas (Tex. Civ. App.) 16 S.W.(2d) 412; Waid v. Mills (Tex. Civ. App.) 8 S.W.(2d) 522; Brotherhood v Edmonds (Tex. Civ. App.) 10 S.W. (2d) 1011."

Appellant's propositions I, III, IV, V, VI, and VIII alone remain for consideration on the merits.

Nos. I, III, and IV in the aggregate affirm: (1) That his special demurrer to the appellees' petition invoking so much of our statute of frauds as interdicts any action upon a lease of real estate for longer than one year that is not based upon a promise or agreement in writing, should have been sustained; (2) that, as against such plea on his part, his mere possession, use, and occupancy of the premises from and after the date of the alleged agreement did not entitle appellees to recover as on a parol contract of sale for cash of the lease, their remedy being a suit for the reasonable value of such use and occupancy; (3) that parol testimony was inadmissible "to prove up a contract of sale of a lease on real estate for an unexpired term of more than two years, over defendant's plea setting up as a defense the statute of frauds," etc.

No. V, in substance, is: Appellees having relied upon a parol contract of sale for cash of a lease on real estate for an unexpired term of over two years, which was in violation of the statute of frauds, acts of appellant that were either just as consistent with the existence of no lease contract at all, or with one in keeping with that statute as violative of it, as they were with one in suit, could not be regarded as constituting part performance of the contract so declared upon, especially when they occurred after he had repudiated it.

No. VI simply asserts that the evidence was insufficient to support a finding that such a contract as was sued upon was made.

No. VIII declares that appellees were estopped to compel appellant to perform the agreement recovered upon, which was not binding on either of them because both violative of the statute of frauds and a contract to convey a homestead interest, by their failure to move for its performance not only until after they, or at least the husband, had as owners of the lease in writing demanded the rents from the premises of himself and his subtenants thereon, but also until after the husband, with the wife's ratification, had made a second agreement transferring the lease to appellant subsequent to the latter's repudiation to the husband of any obligation to the wife under the first agreement, upon which the court gave them judgment.

None of these presentments, we conclude, should be sustained. They seem to us to reflect, ab initio, a misconstruction of the case made in the circumstances by the pleadings and proof of the appellees. Mrs. Baxter was the plaintiff in interest; Mr. Baxter joining in the suit as a matter of form only for the prosecution of her declared upon separate claim. They were husband and wife, having a young child, and as a family so constituted lived together at all times material here. Prior to May 12, 1924, Mr. Baxter had been employed in the mercantile business at the town of La Ward, Tex., by the firm of L. Ward & Son, and was then living there with his family in the firm's dwelling house located near by its store building. On that date

he and appellant, by joint contribution, bought the Ward stock of merchandise, furniture, and fixtures located in the store building, and also, under the name of "Wingart & Baxter, a partnership composed of W. H. Wingart and T. J. Baxter, as lessees, by virtue of the written contract, the 3-year renewal term of which gave rise to this suit, leased as an entirety at an agreed rental of $50.00 per month from Mrs. Bettie C. Ward, Executrix, etc., et al., as lessors for two years from May 8, 1924, with optional tenure to lessees of three additional years at the same price and terms, the Ward & Son three pieces of property, which are thus described in the lease referred to:

"1. All of the store building and lot or enclosure situated at La Ward in Jackson County, Texas, now and heretofore occupied by La Ward Mercantile Company as place of business, together with all and singular the other buildings situated on said lot and within the store enclosure;

"2. The dwelling-house and lot now occupied by said T. J. Baxter, with his family, situated at La Ward in Jackson County, Texas; and

"3. The small trap pasture located at La Ward, Texas, lying between said store building and its fence enclosure and said dwelling house and its fenced lot or enclosure."

This partnership purchase of both the stock of goods and the leasehold on the three properties was merely nominal, however, as Baxter alone went into immediate possession of the whole, leaving his family occupying the residence as their homestead, and not only from the beginning individually operated the merchandising business as his own—having shortly after such joint purchase of it reimbursed appellant for the part he had paid in—but likewise also paid the Ward estate all rentals that accrued under the lease; appellant in fact having no interest in, nor possession of, nor paying anything else toward either the business or the leasehold, although he was never formally released from liability under the contract made to the two jointly. These conditions persisted unchanged until the original two-year term of the lease expired, whereupon Baxter alone exercised and performed the terms of the option it gave for a three-year renewal, and thereby perpetuated them on as before for slightly less than one year more, or up until the time of the alleged agreement between Mrs. Baxter and appellant, herein sued upon.

The facts thus stated are established by and found from the undisputed evidence. It is likewise further shown that Mr. Baxter, having in the meantime become embarrassed in business, and at a time when, with the knowledge of appellant, he was occupying the store building as a place for exercising his calling as the head of his family, and, with his wife and daughter, the dwelling house as their homestead, both parcels being part of one general property under the lease and separated only by a small open town lot, called a trap pasture, on the 9th day of March, 1927, made an assignment, as under the Texas statute, for the benefit of his creditors, of "all his real and personal estate, other than that which is by law exempt from execution"; on March 12, 1927, his named assignee issued written notice to his creditors, among whom were his wife and this appellant, advising that ten days later he would sell to the highest bidder for cash all property which passed into his hands by Baxter's deed of assignment to himself of March 9th, including, among other things, the stock of general merchandise in the store, together with the furniture and fixtures therein, and open accounts receivable, all of the aggregate inventoried value of $8,538.46, of which total the merchandise amounted to $5,159.62, the furniture $1,575, the accounts $1,803.84, also "certain leases on real estate are included in the property to be sold and all such rights and title to these leases as passed to me by virtue of the Deed of Assignment aforesaid"; the sale as so advertised took place on March 22, 1927, and appellant became the purchaser of the stock of merchandise along with such title to the lease on the store building as the assignee held, and the accounts, for a total of $2,400, according to this report made next day by the assignee to Baxter's creditors: "Mr. W. H. Wingart of Francitas, Texas, bid in the stock of goods and whatever rights I, as Assignee, had in the lease on the building, for $2,300.00. He also became the purchaser of the accounts owing to Mr. Baxter at the price of $100.00."

Neither of the Baxters made any protest, or asserted any conflicting right at this sale, and appellant, with their knowledge and acquiescence, from and after its date both took possession of the store with its contents and paid all the $50 monthly rentals to the Ward estate on the lease involved, not getting possession of the dwelling house, however, until the Baxters moved out of it on May 5th following, they claiming to have held the residence over until that date and to have made no objection to the assignee's sale, or to delivery of the property under it, as in compliance with the agreement Mrs. Baxter declared upon herein. Since so acquiring possession of the whole property, however, appellant continuously thereafter used and occupied the same, enjoying all revenues therefrom and paying all charges against it.

Athwart the course of the uncontroverted facts thus appearing came Mrs. Baxter's averments of a cause of action and the evidence adduced in support of them. She pleaded, as the quoted and very succinct opening statement has it, that appellant, upon a parol agreement made between the two after the assignee's notice of the intended sale of her

husband's assets had been issued and before the sale pursuant thereto, agreed with her that, "knowing full well that the plaintiff, Mrs. Mary Baxter, was claiming a valuable homestead right and property right in and under said lease, * * * proposed to the said Mrs. Mary Baxter that in case he became the purchaser of the Baxter stock of merchandise, he would give her One Thousand ($1,000) Dollars as her own separate property if she would make no further claim in and under said lease, and with her husband turn over to him their possession thereunder of said residence and store building and pasture or trap, and she thereupon, a few days before said sale by the assignee was to be made, the exact date of which she does not now remember, with the consent of her husband to the terms thereof, accepted the offer and proposition." She also charged, after setting up the facts hereinbefore appearing as to her husband's assignment, the procedure consequent thereupon, his family relations during all such times, and the nature, tenure under, and duration of the lease from the Ward estate on the properties, that appellant did buy the stock of merchandise, whereupon she and her husband complied in all respects with her verbal agreement, making no further claim under the lease and delivering up to him their possession of the residence, the store building, and the trap pasture, and further: "He and his said wife, the plaintiff, Mrs. Mary Baxter, were claiming the aforesaid residence and store building * * * and said trap pasture, as and for their homestead, and were occupying same as such, and they now say that said premises were at such time their homestead and as such exempt to them from forced sale as against their creditors, and that at such time they had and held a written lease thereon from the owners thereof for a definite term of years, * * * which lease by its terms would not expire until the 8th day of May, 1929, upon the terms of such lease being complied with by plaintiffs; that by virtue of the premises and the facts hereinbefore and hereinafter alleged, such leasehold and leasehold interest in said premises and improvements did not pass to the assignee of the said T. J. Baxter under or by virtue of the terms of the assignment so made by the said T. J. Baxter."

■ When the evidence is looked to, there can be no doubt of its sufficiency to support the learned trial court's finding that the agreement was made substantially as alleged. It is true there was a direct clash about the matter between the parties; both appellees testifying that the determining interview occurred at their home, the dwelling house referred to in the lease in the interim between the assignee's advance notice of and the subsequent sale of Baxter's property, in which they were corroborated as to material particulars by a servant, while the appellant, although admitting his presence there at the time, as emphatically denied that any such thing took place at all. It was the exclusive province of the trial judge in such circumstances to resolve the conflict; his action in doing so being binding upon this court. National Grand Lodge, Loyal Friends of America Benevolent Ass'n, v. Wilson (Tex. Civ. App.) 6 S.W.(2d) 206; Schulte v. Republic Supply Co. (Tex. Civ. App.) 297 S. W. 667; Hines v. Kansas City Life Ins. Co. (Tex. Civ. App.) 260 S. W. 688; Moore v. Porter (Tex. Civ. App.) 281 S. W. 232; Austin v. Nieman (Tex. Civ. App.) 3 S.W. (2d) 128.

■■ Under all the facts so required to be regarded as established, we think it must be held that:

(1) The whole property being within the town, or urban, Mrs. Baxter had a valuable and individual homestead right for the unexpired term of the lease in both the store building where her husband was exercising his calling as the head of their household, and the dwelling house where his family was actually residing, which, with her husband's consent and co-operation, she could relinquish in the manner here shown for a consideration that in turn became her separate property. Speer's Law of Marital Rights in Texas (3rd. Ed.) c. 22, pars. 453-459, inclusive, and 468, together with authorities cited in footnotes.

In the scholarly work cited, Judge Speer thus in part, in paragraphs 457 and 459, supra, states the principles of law here applicable:

"The wife's homestead right is a peculiar right. It is, of course, usually in property a part of the realty. She may own the fee, or she may have no title whatever therein. Her rights arise immediately when the property shall be used for the purposes of a home, or as a place to exercise the calling or business of the head of a family; in other words, as it is more frequently expressed, immediately upon the dedication of the property for homestead purposes. * * * This peculiar right continues so long as the property is occupied by the family as a home, and in some instances even longer. It cannot be assigned nor sold, nor will it descend. Yet she enjoys a very distinct, personal, individual right, which, if not property itself, may be relinquished for a consideration which in turn becomes her separate property; Blum v. Light, 81 Tex. 414, 16 S. W. 1090; Drake v. Davidson, 28 Tex. Civ. App. 184, 66 S. W. 889; Jones v. Jones (Tex. Civ. App.) 146 S. W. 265; Howard v. Mayher, 39 Tex. Civ. App. 529, 88 S. W. 409.

"The business homestead is a part of the one homestead exempted by law, and its combined value with the residence home must not exceed the constitutional limit.

If rural, the 200 acres permitted are supposed to constitute the business homestead as well as the residence, since the calling or business of those who live in the country is usually farming or a kindred vocation, while the vocation of those who live in our towns and cities varies. 'Therefore, if the head of a family be a merchant, in addition to his 'home, his storehouse is exempt; if a lawyer or doctor, his office; if a farmer, his farm; if a gardener, his garden, etc.—the only limitation as to quantity, in case of urban property, being one of value.' "

■ (2) The statute of frauds had no application to her agreement of relinquishment as so alleged and proved; it having been carried out on the part of herself and husband by delivering the premises to and thereafter making no claim on account thereof against appellant, which possession he accepted and subsequently made exclusive use of for his own benefit, hence became bound for the stipulated consideration, in any event being charged upon the equities resulting from the acts thus done in the execution of the contract, if not upon the contract itself. Southern Building & Loan Ass'n v. Jackson (Tex. Civ. App.) 290 S. W. 266; Belcher v. Schmidt, 62 Tex. Civ. App. 411, 132 S. W. 833; Showalter v. McDonnell, 83 Tex. 158, 18 S. W. 491; Adkins v. Watson, 12 Tex. 199; Fulton v. Robinson, 55 Tex. 401; Sprague el al. v. Haines, 68 Tex. 215, 4 S. W. 371 (note under case); Texas Company v. Burkett, 117 Tex. 16, 296 S. W. 273, 54 A. L. R. 1397; Morris v. Gaines, 82 Tex. 255, 17 S. W. 538; Ponce v. McWhorter, 50 Tex. 562; 27 C. J. p. 342, § 427; Lodge v. Leverton, 42 Tex. 18; 3 Pomeroy, Equity Jurisprudence (3 vol. Ed.) p. 457, § 1409; 4 Pomeroy, Equity Jurisprudence (4th Ed. 1918—19) § 3346.

The rule the courts apply to such situations is thus expressed in these excerpts from the opinions in Association v. Jackson and Belcher v. Schmidt, respectively:

"Rev. St. 1925 art. 3995, subd. 4, does not apply where one party to an oral agreement thereto has fully performed his obligations and the other has received and is enjoying benefits of such performance."

"Accepting the allegations in the petition as true, plaintiff had transferred the lease to the defendant, delivered possession of the land, and had rendered all the services which he had agreed to perform. Defendant had accepted the lease, had gone into possession of the land, and had used it. If, in any event, it could be said that the agreement when first made came within the purview of our statute of frauds (Sayles' Ann. Civ. St., art. 2543), that statute had no application after plaintiff had fully performed the obligations imposed upon him by the terms of the contract and defendant had accepted the benefits of such performance."

■ (3) Parol testimony was properly admitted to prove up such an alleged agreement; the statute of frauds not standing in the way. Lechenger v. Merchants' National Bank of Houston (Tex. Civ. App.) 96 S. W. 638; Jones on Evidence (Horwitz Ed. 1913) vol. 3, pp. 141, 142.

As affects the issues raised, we regard as immaterial the fact that the trustee under the assignment inventoried the lease on the store building and residence as personal property of T. J. Baxter of the value of $500, and that the latter swore to it as being just, true, and correct. Baxter explains that by saying that he meant his individual interest in it, not that of his wife, which had been distinct and separate all the time. Whatever he meant or intended, that was, in our opinion, the legal status as to her interest in the circumstances, which alone is what this suit is concerned with.

Appellant's alleged contravening equities do not seem to make, at the most, a controlling appeal, since it undisputedly appears, mainly from his own testimony, that he took over from the assignee's sale for the $2,400 he paid tangible assets of the inventoried value of $6,963.46 besides the lease itself, and then subrented parts of the premises received for well-nigh if not quite enough to pay the $50 per month rentals he thereafter owed the Ward estate for the balance of the unexpired term of the lease.

Further discussion is deemed unnecessary, since these conclusions determine the merits of the appeal.

The judgment of the trial court has been affirmed, with Chief Justice PLEASANTS dissenting.

Affirmed.

PLEASANTS, C. J. (dissenting).

In my opinion the judgment of the trial court cannot be affirmed without disregarding well-settled rules of law governing a suit to enforce a parol contract for the sale of an interest in land.

If Mrs. Baxter gave or promised any right or thing of value in consideration for appellant's promise to pay her the $1,000 awarded her by the judgment of the trial court, it was her homestead right in the premises conveyed to appellant by the assignee to whom Mr. Baxter had previously assigned all of his property for the benefit of his creditors. This assignment expressly includes the premises for sale or release of which by Mrs. Baxter appellant is shown by sufficient evidence to have agreed to pay her, as her separate funds, the $1,000.00 recovered by the judgment. Neither the pleadings of the plaintiff nor the opinion of the majority of the court can change or obscure the fact that in its essential purpose this suit is one to recover the agreed consideration for a parol sale of an interest

in land, and the contract sought to be enforced is within our statute of frauds, unless excepted therefrom by reason of such part performance by appellees as would authorize a court of equity, in the prevention of fraud, to refuse to permit appellant to repudiate his contract by pleading the statute.

Appellees' brief, if not expressly so stating, presents their case as within the statute unless excepted therefrom by the equitable principle which forbids the enforcement of a rule of law designed to prevent fraud in a case in which its enforcement would perpetrate a fraud.

There is nothing in the facts of this case to invoke the equitable principle relied on by appellees to relieve the contract sued on from the application of the statute of frauds, which requires all contracts for the sale of an interest in land, or its lease for a longer term than one year, to be in writing.

The following correct and interesting statement of the genesis and evolution of the statute of frauds now found in the statutes of this state is copied from appellant's brief:

"As originally enacted by Parliament, in 1676, the act provided briefly:

"Section 1. That parol leases of real estate, or interest therein for a term of years shall have the force and effect of leases at will only;

"Section 2. Except leases not exceeding three years where the rent is ⅔ of the value of the property are enforceable.

"Section 3. Conveyances of real estate, or an interest therein, or of a lease for a term of years, must be in writing;

"Section 4. No action shall be brought (1) to charge an administrator upon a special promise to answer damages out of his own estate; (2) to charge the defendant upon a promise to answer for a debt, default or miscarriage of another; (3) to charge any person upon an agreement in consideration of marriage; (4) or upon any contract for the sale of land or any interest in or concerning land; (5) or upon an agreement not to be performed within one year from the making thereof; (6) unless the agreement upon which action is brought is in writing, signed by the person or by someone by him duly authorized;

"Section 17. No contract for the sale of goods, wares or merchandise for the price of 10 pounds, or upwards, shall be good, except the buyer shall accept part of the goods and actually receive same or give something in earnest to bind the bargain, or that some note or memorandum in writing be made and signed.

"During the reign of George IV, by what was known as 'Lord Tenderden's Act,' the two further provisions were added: (1) That one shall not be held to liability for parol representations as to the character or credit of another; (2) the provisions of Section 17 above were extended to executory contracts for the sale of goods.

"Parts of the above original statutes have been carried into article 1288, Revised Statutes of 1925, of Texas, under the title, 'Conveyances.' Section 4 has been carried to the title, 'Frauds and Fraudulent Conveyances,' with some changes, one being that an administrator is not chargeable upon a parol agreement to answer for any debts (not damages alone) due from his intestate. Another change is that a person is not chargeable upon a parol lease of real estate for a longer term than one year. The other provisions of the original statute have been omitted in Texas.

"Here it might be noted that the original statute expressly provided that part performance did permit enforcement of a contract for the sale of goods, wares and merchandise, from which the only inference, under proper rule of construction is, that part performance as such was never intended to permit the enforcement of any contract made in violation of any other provision of the statute.

"From the wilderness of confusion in the various litigated cases; the only ground, if any exists, or ever existed, upon which the judges can be said to commonly agree, as justifying courts of equity in refusing to enforce the statute as plainly written, is that the statute may not, itself, be used to perpetrate a fraud."

In the case of Hooks v. Bridgewater, 111 Tex. 122, 229 S. W. 1114, 1116, 15 A. L. R. 216, our Supreme Court, speaking through one of its great Chief Justices, in discussing the proper application of the equitable principle invoked by appellees, says:

"Whatever may be the diversity of views upon the general subject, it is clear that to warrant equity's 'breaking through the statute' to enforce such a parol contract, the case must be such that the nonenforcement of the contract—or the enforcement of the statute—would, itself, plainly amount to a fraud. This is the basis, and the only basis, for the jurisdiction which courts of equity have assumed in their creation of exceptions to the statute. When it is considered that the exercise of that jurisdiction results in any case in practically setting the statute aside, certainly there should exist some positive rule which will insure its exercise for only the prevention of an actual fraud as distinguished from a mere wrong, and by which the question of whether a failure to enforce the contract would result in such a fraud may be determined so surely as to leave the statute itself, through the exactness of the exception, with some definiteness of operation."

In the case of Purcell v. Coleman, 71 U. S. (4 Wall.) 513, 517, 18 L. Ed. 435, it is said:

"The statute, which requires such contracts to be in writing, is equally binding on courts of equity as on courts of law. * * *

"A mere breach of a parol promise will not make a case for the interference of a chancel-

lor. It is plain that a party who claims such interference has the burden of proof thrown on him. He knows that the law requires written evidence of such contracts. * * * When he requests a court to interfere for him, and save him from the consequences of his own disregard of the law, he should be held rigidly to full, satisfactory, and indubitable proof—

"First. Of the contract, and of its terms. Such proof must be clear, definite, and conclusive, and must show a contract, leaving no jus deliberandi, or locus poenitentiae. * *. *

"Third. Such a part performance of the contract that its rescission would be a fraud on the other party, and could not be fully compensated by recovery of damages in a court of law."

The opinion of the majority gives no effect to the tendered written transfer of the lease attached to plaintiff's pleading, and such tendered transfer was manifestly insufficient to defeat defendant's right to plead the statute in defense of plaintiffs' suit on the parol contract declared on in their petition.

So the only question upon which my dissent from the majority arises is whether the evidence is sufficient to authorize the application of the principle of equity on which the majority bases the conclusion that the trial court properly held that the statute of frauds pleaded by appellant was not a defense to plaintiff's suit. That it was prima facie a complete defense cannot be questioned, and if, as seems to be well settled, the burden was upon appellees to show that the enforcement of the statute would perpetrate a fraud upon them for which the law gives no adequate compensation, I think the evidence not only fails to discharge this burden, but affirmatively shows that no fraud or wrong would be perpetrated on appellees by denying a recovery of the $1,000 agreed to be paid Mrs. Baxter by appellant.

The undisputed evidence shows, as stated in the opinion of the majority, that the property for the sale or release of which appellant is shown to have agreed to pay Mrs. Baxter $1,000 consisted of a leasehold interest under a lease originally executed by the owner of the property to appellee Mr. Baxter and appellant, and which at the time the contract declared on in this suit was made would not terminate for two years or more. The property covered by this lease was a store building and lot in the town of La Ward and several other small buildings situated on the storehouse lot, also a dwelling house on a nearby lot, and a small parcel of land lying between the storehouse lot and the lot on which the dwelling house was situated. While this lease continued to be held in the name of Wingart & Baxter, some time prior to his assignment for the benefit of his creditors, Mr. Baxter had repaid appellant the amount advanced by him for the lease and for the purchase of the business operated thereon and was the sole owner of the lease and the mercantile business which he conducted thereon. As stated in the majority opinion, appellant's connection with the original transaction was solely for the benefit of Mr. Baxter, who was at all times the real owner of the lease and the business.

This was the situation when, his business becoming insolvent, Mr. Baxter on March 9, 1927, made a general assignment under the statutes of this state for the benefit of his creditors. The deed of assignment expressly conveys to the trustee named therein for the benefit of his creditors the leasehold interest before described, which was valued in the deed at $500. The trustee, after due notice, sold the property conveyed to him by the deed of assignment at public sale on March 29, 1927. The appellant became the purchaser at this sale, and the property was conveyed to him by the trustee. Immediately after his purchase, appellant took possession of all of the property except the dwelling house and lot on which it was situated, and placed Mr. Baxter in charge of the business under an agreement by which the business and all of the property conveyed to him by the trustee could be repurchased by Baxter if and when he could raise the money to repay appellant the amount paid for its purchase from the trustee. Baxter and his family continued to occupy the dwelling house until May 5, 1927, when they voluntarily, without any demand or request on the part of appellant, moved to another place of residence, in another town. Baxter managed the business for only a few days, as appellant became dissatisfied with the way in which he performed his duties. On April 13th, before Baxter and his family moved from the dwelling, appellant was notified by an attorney for Baxter and his wife that they, or Mrs. Baxter, claimed homestead rights in the property conveyed appellant by the trustee. After getting this notice, appellant called on Baxter on May 9, 1927, and requested that the original lease of property be turned over to him. Baxter agreed to do this if appellant would pay a $1,500 debt of his for which appellant was surety. Appellant agreed to this, and in a few days the original lease was turned over to appellant by Baxter's attorney, and thereafter appellant paid the $1,500 in accordance with his agreement. Appellant did not use or rent the dwelling house from which the Baxters moved on May 5, 1927, until January, 1928. After the agreement with Baxter above stated, no demand or claim was made upon appellant for any homestead interest in the property nor for the payment of the $1,000 involved in this suit until the suit was filed on February 4, 1929, or shortly prior thereto.

In my opinion these facts, which are uncontroverted, fall far short of meeting the burden upon appellees to show that a rescission of

the contract because not in writing would be a fraud upon appellees. On the contrary, it seems to me that the equities of the case are with appellant.

In addition to this, a refusal of the court to enforce this contract because it is not in writing as required by the statute will not leave appellees without a remedy for any wrong they may thereby sustain, as there is no hindrance to the prosecution of a suit for damages for the rental value of the property and recovery of same if they have not been paid such rental value.

### On Motion for Rehearing.

GRAVES, J.

On reconsideration, despite much respect for the opposing views of both appellant's able counsel and its Chief Justice, this court is unable to recede from its former judgment. Three points of material difference appear between their common conclusions and its own that are, in substance, expressed alike in the motion for rehearing and the dissenting opinion, to wit:

(1) "This suit is one to recover the agreed consideration for a parol sale of an interest in land, and the contract sought to be enforced is within our statute of frauds, unless excepted therefrom by reason of such part performance by appellees as would authorize a court of equity, in the prevention of fraud, to refuse to permit appellant to repudiate his contract by pleading the statute."

(2) "There is nothing in the facts of this case to invoke the equitable principle relied on by appellees to relieve the contract sued on from the application of the statute of frauds, which requires all contracts for the sale of an interest in land, or its lease for a longer term than one year, to be in writing."

(3) "Mrs. Baxter's remedy was a suit for the reasonable rental value of the use and occupancy of the premises, instead of for the specific performance of the contract she declared upon, which could be set up only by way of inducement."

The first of these conceptions, it seems to us, fails to soundly appraise the essential nature of the homestead right in Mrs. Baxter that constituted the subject-matter of her claimed agreement with appellant. Having no title to that, it was not an estate in the land that she essayed to sell by parol, as the dissent puts it, but only the bona fide relinquishment for valuable consideration of a distinctly personal individual right to the use and occupancy of the property for such purposes throughout the remainder of the homestead period vouchsafed her by the Constitution and laws of the state for the protection of the exemption accorded her family. Crowder v. Bank, 114 Tex. 34, 261 S. W. 375; Blum v. Light, 81 Tex. 414, 16 S. W. 1090;

Jones v. Dewbre (Tex. Civ. App.) 13 S.W.(2d) 233; Speer's Law of Marital Rights in Texas (3d Ed.) par. 457, and cited authorities.

So that, as our Supreme Court states the applicable principle in Blum v. Light, supra, at page 420 of 81 Tex., 16 S. W. 1090, 1092 (italics our own): "*It is not a question of conveyance under the statute of frauds,* but whether the bill of sale from Brandenberger to Hannah M. Light for the cattle was simulated and colorable, and it was not intended by the parties that the title should pass to Mrs. Light, but merely to enable her to hold the property as the ostensible owner, and in that way secure it to the husband as against his creditors. Baines v. Baker, 60 Tex. 140. * * * If we view the transaction as a gift of the community interest of the husband to his wife it would be good, though voluntary; but, if we view it as it was,—as a conveyance procured by the husband to be made to the separate use of the wife in consideration of her relinquishment of her homestead right,— it was on a valuable consideration and valid."

Irrespective, therefore, of the statute of frauds, and agreeably to the law as announced in cases like Texas Co. v. Burkett, 117 Tex. 16, 296 S. W. 273, 54 A. L. R. 1397, we are clear that, under the facts that must here be deemed to have been found below, it must be held that there was such full performance of the alleged agreement by Mrs. Baxter and such part performance by appellant as would have made it amount to the sanction of a legal fraud upon her, had the court permitted him to escape full compliance also by interposing its provisions.

On this phase of the case we are wholly unable to acquiesce in the findings made in the dissent as constituting the uncontroverted facts. While appellant's own testimony so tended, he was contradicted by other evidence as well as by both Mr. and Mrs. Baxter as to all features material here; that is, they both in effect swore that he did not repudiate the declared upon contract with Mrs. Baxter, alleged to have been made before his trustee's sale of her husband's assets on March 22d of 1927, and make another with the husband inconsistent therewith before the appellees had performed their part of the one she thus sued on, but that, on the contrary, neither she nor Mr. Baxter for her ever made any other agreement touching her homestead rights with him, that they fully performed the one she did so make by (pursuant to and in compliance with its terms) first allowing him without protest to take over the store, etc., at the trustee's sale thereof on March 22d of 1927, and then, after remaining in there meanwhile "under him, with his consent, and not claiming the lease against him," by delivering possession of the residence to him on May 5th thereafter, all of which he then likewise accepted and thereafter exclusively

used and enjoyed throughout the remaining two years the lease called for; they never having subsequently made any further claim thereto.

Mr. Baxter's deed of assignment to his trustee of March 9, 1927, neither expressly conveyed the leasehold interest in question, nor valued it at $500, and he testified on this trial that he neither intended nor undertook thereby to alienate anything that belonged to his wife, or that was exempt; the deed in general terms merely purporting to convey "all his real and personal estate, other than that which is by law exempt from execution."

■ Such having been the purport of the testimony and this having been a trial before the court without a jury, in which there was neither a motion for a new trial nor findings of fact and law, and the court having made a general finding in favor of the appellees, to say the least of the resulting situation on appeal, what we have summarized must be deemed in support of the judgment to have been the facts found, notwithstanding conflicts. National Grand Lodge, Loyal Friends of America Benev. Ass'n, v. Wilson (Tex. Civ. App.) 6 S.W.(2d) 206; Schulte v. Republic Supply Co. (Tex. Civ. App.) 297 S. W. 667; Hines v. Kansas City Life Insurance Co. (Tex. Civ. App.) 260 S. W. 688; Moore v. Porter et al. (Tex. Civ. App.) 281 S. W. 232; Austin v. Nieman (Tex. Civ. App.) 3 S.W.(2d) 128; Boyd v. Keystone Driller Company (Tex. Civ. App.) 6 S.W.(2d) 221; Sonora Realty Co. v. Fabens Townsite & Improvement Co. (Tex. Civ. App.) 13 S.W.(2d) 965.

The acts thus done—that is, Mrs. Baxter's making no further claim to the premises, and, joined by her husband, delivering possession of them to the appellant, which he accepted—being solely referable to and in direct execution of the contract pleaded, whether or not it was enforceable as such, in our opinion, gave rise to such resulting equities in her favor as charged the appellant thereon. See authorities cited at page 527(2), original opinion.

The case thereby made is more nearly analogous, we think, to the Burkett Case, supra, than to Hooks v. Bridgewater, 111 Tex. 122, 229 S. W. 1114, 15 A. L. R. 216, relied upon by appellant and in the dissent, which has three distinguishing features from those obtaining here: (1) There the vendee was seeking specific performance; (2) the contract was one directly for the conveyance of real estate, hence clearly within the statute of frauds; and (3) the vendee had never been given possession of nor made any improvements on the land—whereas in this instance Mrs. Baxter was the grantor or vendor, and gave up in return for appellant's promise of the $1,000 all she had in the property, her valuable homestead right for two years that

obviously was not alienated by the trustee's sale of her husband's assets, including instant possession thereof, which appellant accepted, thereby himself doing an act of part performance. After thus causing her position to materially change for the worse, he could not in equity retain both the property and the price he agreed to pay for its use.

The concluding suggestion that a refusal to enforce the contract alleged would not leave the appellees without a remedy, as there was no hindrance to their recovering as on an implied promise the reasonable rental value of the property, ignores the fact that they declared upon an express oral contract to then relinquish its possession, along with all further claim thereto for homestead purposes, wherefore any basis for such an implication was excluded. Carpenter v. U. S., 17 Wall. 489, 21 L. Ed. 680; 39 Cyc. 853; Clark v. U. S., 95 U. S. 539, 24 L. Ed. 518; Anson Contr. (2d Amer. Ed.) p. 365; 27 C. J. p. 362, § 440, note (a); Robb v. San Antonio Street Railway Co., 82 Tex. 392, 18 S. W. 707; Ray v. Young, 13 Tex. 550; Raycraft v. Johnston, 41 Tex. Civ. App. 466, 93 S. W. 237; Sprague v. Haines, 68 Tex. 215, 4 S. W. 371.

The motion for rehearing has been overruled.

Overruled.

PLEASANTS, C. J., dissents.

On Motion to Correct Findings of Facts.

PLEASANTS, C. J.

Appellant has filed a motion complaining of the following fact conclusion in the opinion of the majority of this court:

"Mr. Baxter's deed of assignment to his trustee of March 9th, 1927, neither expressly conveyed the leasehold interest in question, nor valued it at Five Hundred ($500.00) Dollars, and he testified on this trial that he neither intended nor understood thereby to alienate anything that belonged to his wife, or that was exempt, the deed in general terms merely purporting to convey 'all his real and personal estate, other than that which is by law exempt from execution.'"

This statement, while literally accurate, if considered by itself, would be misleading. The record speaks for itself and the facts upon this issue are uncontradicted. Other statements in the opinion of the majority show that Mr. Baxter, as a supplement to his deed of assignment, signed and swore to a list or inventory of the property conveyed by his deed and the value thereof. This list or inventory contains the leasehold interest in question described as follows: "Lease of store building and residence at LaWard, Texas, expiring in May, 1929, $500.00."

When the opinion of the majority is read as

a whole, the statement complained of in the motion can only be taken as the conclusion of the majority, that the signing and verifying by Mr. Baxter of the inventory and value of the property covered by his deed cannot be considered as a part of the conveyance, as was done in the dissenting opinion. With this explanation I do not think that the statement complained of in the motion is materially erroneous, and the motion to correct it was properly overruled.

Motion overruled.