## SOUTHERN BUILDING & LOAN ASS'N v. JACKSON.    (No. 9668.)

(Court of Civil Appeals of Texas. Dallas. Nov. 13, 1926. Rehearing Denied Jan. 8, 1927.)

**1. Frauds, statute of ☞139(1)—Statute does not apply where one party to oral agreement has fully performed and other has received benefits (Rev. St. 1925, art. 3995, subd. 4).**

Rev. St. 1925, art. 3995, subd. 4, does not apply where one party to an oral agreement obnoxious thereto has fully performed his obligations and the other has received and is enjoying benefits of such performance.

**2. Building and loan associations ☞38(6)—Association assuming loan company's obligations held bound to carry out oral agreement to release land from trust deed.**

Building and loan association, assuming all obligations of loan company and fully acquainted with latter's agreement to release parts of two lots from trust deed when building on remainder was completed, *held* obligated to execute the release on demand after completion of the building.

**3. Specific performance ☞39—Promise to release land from trust deed held not obnoxious to statute, so as to bar specific performance.**

After performance of an oral agreement to execute an additional deed of trust and erect a building on land which constituted the entire consideration for the release of parts of the land not covered by the building, the unfulfilled promise to execute such release was not obnoxious to the statute of frauds, so as to bar specific performance.

**4. Mortgages ☞335—Mortgagee must notify mortgagor of withdrawal of promise to extend time for paying installment before declaring forfeiture.**

It is the duty of a mortgagee, promising to allow additional time for payment of an installment, to notify the mortgagor of withdrawal of such promise before declaring a forfeiture.

**5. Mortgages ☞369(8)—Mortgagee's promise to extend time for payment of installment and mortgagor's reliance thereon held for jury.**

Whether mortgagee promised to allow a few more days for payment of an installment and mortgagor relied on such promise *held* for the jury in an action to cancel the trustee's sale and deed of the mortgaged lot.

Appeal from District Court, Dallas County; Royall R. Watkins, Judge.

Action by James Jackson against the Southern Building & Loan Association. Judgment for each party in part, and defendant appeals and plaintiff brings cross-assignments of error. Affirmed in part, and reversed and remanded in part.

Frank A. Loftus, of Dallas. for appellant. W. B. Lewis, of Dallas, for appellee.

JONES, C. J. Appellee, James Jackson, instituted this suit in the district court of Dallas county against appellant, the Southern Building & Loan Association, seeking to recover damages resulting to him from the failure of appellant to carry out an alleged agreement to release a deed of trust lien on a portion of two lots owned by appellee and situated on Knox street in the city of Dallas; also seeking to have canceled the sale and trustee's deed of a certain lot owned by appellee located in the city of Dallas had under the terms of a deed of trust executed by appellee in favor of appellant. The trial in the district court resulted in a judgment in favor of appellee, on the first count in his suit, for damages in the sum of $1,575.25, and in favor of appellant on peremptory instruction from the court on the issue of cancellation of the said trustee's sale. Appellant has duly appealed from the judgment for damages, and appellee, by proper cross-assignments of error, has brought the portion of the judgment adverse to him before this court for review. The two matters disposed of by the judgment being separate and distinct, and each resting on separate facts, the facts of each as well as the issues relevant thereto must be separately stated and discussed.

The facts relating to the issues involved on appellant's appeal are: The United States Loan & Investment Company, under a trust agreement, duly placed of record in Dallas county, transacted the business of selling and securing investors for 3 per cent. loan certificates issued by said company, and of loaning money thereon, with E. G. Kemper as its president and general manager and E. M. Herndon as its secretary, treasurer and general counsel, and also as trustees for said company, in whom was vested control of the company's business. By a second agreement, also placed of record in Dallas county, its business was enlarged, permitting it also to issue and sell loan certificates bearing other rates of interest. These certificates required monthly payments, and after a certain number of such payments had been made, the owner could borrow money from said company at the rate of interest provided for by the certificate, by the execution of a note in the amount loaned, said note to be secured by a deed of trust lien on approved real estate. The United States Loan & Investment Company, as such trust estate, did the character of business above mentioned until about April 1, 1922, when its business and all its contracts and property of every character were transferred to appellant, a corporation doing the same character of business, and after such transfer the United States Loan & Investment Company dissolved its trust estate and ceased to exist. The agreement between appellant and the

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

United States Loan & Investment Company under which this transfer was made was in writing, and the ninth paragraph of this written instrument is as follows:

"Now, therefore, in consideration of the transfer of the said business and contracts of the party of the first part to the party of the second part, the party of the second part hereby agrees to take said contract business of the party of the first part and to carry out each and every agreement and stipulation contained in the contract form of Class A and B as hereinbefore mentioned, and to fulfill all of the obligations of said contracts and hold the party of the first part harmless of any damage that might accrue by the failure of the party of the second part to fulfill all of the obligations to the contract members."

Previous to appellant's taking over the business of the United States Loan & Investment Company, appellee had become a shareholder in said company, and after he had paid the necessary monthly installments required for a loan, he applied for and secured two loans, one known as a Class A loan, for $5,100, which bore 3 per cent. interest and which matured in 85 months thereafter, and one known as a Class B loan, for $5,950, which bore 4 per cent. interest and matured 56 months thereafter. As evidence of these loans, appellee executed two notes, each for the respective principal sum and secured the loans by deed of trust on part of lots 1 and 2, in Block A, in Fairland annex addition to the city of Dallas. The portion of said lots made subject to the deed of trust consisted of 85 feet fronting on Knox street and extending back 102 feet. The remaining portion of said lots, being 47-foot frontage on Knox street and extending back 102 feet, was left unincumbered with any lien. Appellee did not secure at once the $5,100 on the Class A certificate, nor the $5,950 on the Class B certificate. These notes bore date of October 10, 1921, and the deed of trust was executed on October 8, 1921, but was not acknowledged until October 10, 1921. On October 11th, appellee received $3,900 on the Class A loan and $1,806.25 on the Class B loan; the said company was to advance the remainder of the sum due him on each of said notes within a short period of time. On December 9, 1921, a further advancement of $1,500 was made on these loans. On January 2, 1922, appellee requested of the United States Loan & Investment Company the remainder of the money due him on said loan, when he was informed by the manager of the company that such remainder would not be advanced unless additional security was given by appellee. After some negotiation between the parties, it was orally agreed that if appellee would execute an additional deed of trust on the remainder of lots 1 and 2 and erect thereon a building, under plans that were

already drawn and which were then approved to the said manager, the balance of the loans would be advanced at once, and when the building was completed all of lots 1 and 2, except 40x102 feet, on which the building was to be erected, would be released. It was explained to, and understood by, said manager that in order to erect this building, a short time loan, secured by a second lien on all said two lots except the portion to be occupied by the new building, would have to be made and would have to be extended and secured by a first lien when the building was completed and the original first lien released. In other words, the United States Loan & Investment Company was to accept as its sole security for the indebtedness represented by the two notes the building to be erected and the ground on which it stood, and was to release all other portions of said lots, and to advance the remainder of the money to appellee on his loan contract.

Relying upon the performance of this agreement, appellee executed a second deed of trust of date January 2, 1922, in favor of the United States Loan & Investment Company, as additional security for the indebtedness represented by the said notes, and floated a short time loan as a second lien on all of said lots 1 and 2, except the part on which the building was to be erected, and erected the building thereon. The market value of lots 1 and 2, which had a frontage of 132 feet on Knox street, at that time was $150 a front foot. The building erected on the 40x102-foot portion of said lots was to, and did, cost $20,000. The market value of said building, when completed, and the lot on which it stood, was $26,000. The market value of that portion (85x102 feet) of said lot which was accepted as sufficient security for the two loans at the time they were entered into was $12,750, so that the security to be held by the United States Loan & Investment Company would thereby be increased in value more than 100 per cent.

The building was erected, according to the plans approved by the United States Loan & Investment Company, by means of a short time loan with a second lien on the property and with some additional money furnished by the said Loan & Investment Company on these loans, but the entire amount due appellee was never advanced by said company. When the building was completed in August, 1922, appellee demanded that the said release be executed by the United States Loan & Investment Company. He was then informed, and knew for the first time, of the purchase of all the assets and contracts and the assumption of all the obligations of the United States Loan & Investment Company by appellant and was directed to go to it for his release. When the release was first demanded, appellant consented to execute it, but, before its execution, it refused to comply

with the agreement and never executed the release. As a consequence of this refusal, appellee was caused to suffer damages in the amount of the judgment.

The case was tried to a jury and submitted on special issues, which were answered favorably to appellee's contention. While these findings are in the main on contradictory evidence, yet they are supported by evidence, and we adopt them as the findings of this court. They established the facts: (a) That the oral agreement above set out was entered into between appellee and the United States Loan & Investment Company; (b) that E. G. Kempner (manager of said Loan & Investment Company), at the time of negotiation for, and transfer of, the notes and loan of appellee, was notified of the existing agreement to release the said property upon completion of the said brick building; (c) that appellant at the time of the said purchase agreed to carry out the agreement to execute this said release; (d) that appellant, acting through its officers, promised appellee when he first applied for said release that same would be executed; (e) that appellant subsequently refused to execute said release; (f) that appellee secured additional money elsewhere to erect the said building by giving second lien notes upon said property; (g) that after being informed of this fact appellant refused to execute the said release; (h) that the failure to execute such release on the part of appellant was done willfully, with the knowledge that injury might result to appellee; (i) that appellee suffered damages by reason of such failure and refusal, and that the damages suffered by appellee arising from the increased rate of interest he had to pay for money to discharge these said notes in order to secure the release and other necessary expenses incident to securing said release was $1,575.25.

[1] The pleadings of the parties are very full, both as to the appellee in alleging all the facts in reference to the various transactions and in reference to his damages, and that of appellant in reference to its defenses. The defense of appellant necessary here to notice is that the agreement of January 2d was void, in that it was oral and not in writing, as required by subdivision 4, art. 3995. Other defenses, in our opinion, have been foreclosed by the finding of the jury. The subdivision of said article, in effect, declares that no action shall be brought in any court upon any contract for the sale of real estate, or the lease thereof for a longer term than one year, unless the promise or agreement upon which such action may be brought, or some memorandum thereof, shall be in writing and signed by the party to be charged therewith or by some person by him thereunto lawfully authorized.

[2] Assuming that the oral agreement of January 2, 1922, was obnoxious to this stat-ute when it was entered into, yet after appellee had performed all that the agreement contemplated that he should perform and appellant had received the entire benefit of appellee's performance, can said statute now be invoked to relieve appellant from the performance of his part of the contract by the execution of the release? We do not think so. As we understand the law, if an agreement when first made comes within the purview of subdivision 4, art. 3995, that statute has no application, after one party to the agreement has fully performed the obligations imposed upon him by the terms of such agreement and the other party has received and is enjoying the benefits of such performance. Belcher v. Schmidt, 62 Tex. Civ. App. 411, 132 S. W. 833; Showalter v. McDonnell, 83 Tex. 158, 18 S. W. 491. It is true that this oral agreement was not entered into with appellant, but it is further true that under the finding of the jury, appellant was made fully acquainted with the agreement, and with the further fact that the United States Loan & Investment Company recognized that a duty rested upon it to execute the release when appellee had performed his part of same and it agreed to do so. In the ninth paragraph of the contract under which the purchase from United States Loan & Investment Company was made, appellant assumed all obligations such company was under to its contract holders, and thereby assumed this obligation to appellee. We are therefore of the opinion that the obligation to execute the release, when demand to so do was made by appellee, was a valid one and became a legal basis for appellee's suit for damages when it refused to carry out this obligation.

[3] Again, as all that portion of the oral agreement that was obnoxious to our statute of fraud had already been performed, viz. the execution of the additional deed of trust and the erection of the building upon the land, same being the entire consideration for the execution of the release, the unfulfilled promise to execute the release was not in itself obnoxious to the statute of frauds, and specific performance of this duty could have been enforced against appellant.

We have considered all of the other assignments of error urged by appellant, and same are overruled. It is our opinion, therefore, that the case as to appellant should be affirmed.

[4, 5] In reference to appellee's cross-assignments of error on the action of the court peremptorily instructing the jury to return a verdict in favor of appellant on the issues made by his pleading for the cancellation of the trustee's sale and deed to appellant of the Oak Cliff property, the facts are: Appellee executed a note secured by deed of trust lien in favor of appellant and received on said note a loan of $770, the transaction

being somewhat similar to the transactions had by the appellee with the United States Loan & Investment Company on the other loans. Under the terms of the deed of trust and the note, appellee was required to make monthly payments, beginning on the 15th of November, 1922, and extending over a number of months. The payments for November and December were made. When the January payment was due, appellee called appellant's office in Dallas and asked for a few days' extension of time. He does not know to whom he talked, other than that it was someone in charge of appellant's books, and in response to this request he was informed that he could have such time. Under the terms of his deed of trust, unless each monthly payment was made on the specified day, appellant had the right to declare the note due and either foreclose on his deed of trust lien, or avail himself of the right given in said instrument to have the trustee sell same at the courthouse door in the city of Dallas, after posting three notices in public places of such sale for 21 days previous to the sale day. A few days after appellee made the request for a few days' time in which to make the January monthly payment, he received a notice from appellant's attorney to the effect that the indebtedness had been declared due because of his failure to meet promptly the January payment, and that the note had been delivered to him to enforce collection. Immediately on receipt of this letter from said attorney, appellee secured from a bank in Dallas a cashier's check for the amount of the monthly payment, together with interest thereon, and mailed same to said attorney. This check was returned with the advice that it could not be accepted as a monthly payment, for the indebtedness had been declared due and its collection must be enforced. Appellee then, with his attorney, visited appellant's attorney, and negotiations were attempted looking to the reinstatement of the indebtedness on the monthly payment plan. All propositions of this kind, however, appellant's attorney refused to accept, unless appellee would release his claim for damages arising out of the refusal of the company to execute the release above discussed. Appellee declined this counter proposition and so the negotiations closed with the statement from appellant's attorney that collection would be enforced, probably by a suit in court, or possibly by a trustee's sale under the deed of trust.

Appellee's evidence shows that the bulletin boards, at the courthouse where such notices are posted, were closely watched to see whether a trustee's sale was advertised, and no such notices were found, and also that appellant's attorney agreed to mail to appellee's attorney a copy of the notice if he undertook to enforce the collection by such method, and no such notice was sent. Nevertheless it appears that the sale was advertised and was made in June, 1923, and the property, which was of the value of $3,000, was bid in by appellant for the amount of the debt. As soon as appellee knew of this sale, which was some time in August of that year, he tendered to appellant the amount of the indebtedness and demanded a deed from appellant to his property. This was refused. In his petition he sets out fully the facts as are above detailed, alleged fraud on the part of appellant in declaring the note due after a promise made to extend it and upon which he relied, tendered the amount due, and asked for a cancellation of the sale.

We are of the opinion that the court erred in taking the matter from the jury and giving peremptory instruction in favor of appellant. If appellant promised appellee to allow a few days for the payment of the said January installment, it became its duty, after such promise, and before it could reasonably be said that the extension had elapsed, to notify appellee that such promise was withdrawn before it declared a forfeiture. Appellee's testimony makes an issue of fact as to the making of this promise and that he relied thereon, and the case should have been submitted to the jury for its determination.

For the error above pointed out, we are of the opinion that the case, in so far as it affects appellee's right on his cancellation suit, should be reversed and remanded for another trial.

The case will therefore be affirmed as to the damages awarded to appellee, but reversed and remanded on the cross-assignments of error of appellee as to that portion of the cause of action praying for a cancellation of the trustee's sale, and it is so ordered.

Affirmed in part, and reversed and remanded in part.