### MEADOR v. WAGNER.
### No. 2986.

Court of Civil Appeals of Texas. El Paso.
April 12, 1934.

Rehearing Denied May 3, 1934.

C. R. Carpenter, of Andrews, and Lockhart & Brown, of Lubbock, for plaintiff in error.

Meritt H. Steger and Church & Graves, all of San Antonio, and Paul Moss, of Odessa, for defendant in error.

HIGGINS, Justice.

This is a suit by Mrs. Meador against Adolph Wagner to recover twenty sections of land in Andrews county.

Wagner, by deed dated August 29, 1929, conveyed to Mrs. Meador several lots in San Antonio, Tex., upon which there were an apartment house and some cottages. The consideration for the conveyance was the execution by the grantee of six notes totaling $5,948.11, and the assumption by the grantee of certain outstanding notes secured by liens upon the land conveyed. To secure payment of the purchase money and assumed notes a vendor's lien was expressly reserved.

The notes so assumed by Mrs. Meador may be briefly described as follows:

1. A note for $28,000 in favor of F. G. and Lucille J. Oppenheimer, executors.

2. A balance of $4,807 upon the principal of a $5,500 note executed by Ed M. Baxter and wife in favor of the Farm & Home Savings & Loan Association, dated December 20, 1927, payable in monthly installments of $68.75.

3. A balance of $731.69 upon the principal of an $800 note executed by Ed M. Baxter and wife in favor of T. E. Barnes, dated June 4, 1928, payable in monthly installments of $10.

4. A balance of $4,632.20 upon the principal of a $5,300 note, executed by Ed M. Baxter and wife, dated December 20, 1927, in favor of the Farm & Home Savings & Loan Association, payable in monthly installments of $66.25.

5. A balance of $731.69 upon the principal sum of an $800 note executed by Ed M. Baxter and wife in favor of T. E. Barnes dated June 4, 1928, payable in monthly installments of $10.

By deed dated August 29, 1929, Mrs. Meador conveyed to Wm. C. Church the Andrews county land in trust to secure the payment of the notes, above mentioned, executed and assumed by her.

It was stipulated that the lien of this deed of trust was subject to the state debt against the land and a deed of trust dated July 1, 1927, executed by Mrs. Meador securing the payment of certain notes in favor of Floyd Shock, two of which had been paid and the other five being then owned by Ed Rand.

By deed dated August 8, 1930, Mrs. Meador conveyed the Andrews county land to J. S. Kelly for the consideration of $10,000 cash, the execution of notes totaling $21,000, and the assumption of a balance of $9,000 upon the five notes above mentioned owned by Ed Rand. To secure the payment of the unpaid purchase money a vendor's lien was expressly retained.

On April 7, 1931, Wagner acquired from T. E. Barnes the two notes above described dated June 4, 1928, executed by Baxter and wife, upon each of which there were principal balances of $731.69, together with the original lien securing same evidenced by deed of trust executed by Baxter and wife to Lee B. Ewing, trustee. The payment of these balances as above stated had been assumed by Mrs. Meador and were secured by her deed of trust of August 29, 1929.

Wagner testified Barnes was threatening foreclosure and he therefore bought the notes. Assuming to act under power conferred by the deed of trust of August 29, 1929, and because of default in the payment of the balances due upon the notes of June 4, 1928, executed by Baxter and wife in favor of Barnes, the trustee, Church, on June 2, 1931, sold and conveyed the Andrews county land to Wagner for $1,500.

By deed dated June 5, 1931, Mrs. Meador reconveyed to Wagner the land in San Antonio in consideration of $10 cash and the assumption by Wagner of the above-described note for $28,000 in favor of the Oppenheimers and the balances upon the two notes dated December 20, 1927, executed by Baxter and wife in favor of the Farm & Home Savings & Loan Association.

By deed dated April 20, 1932, J. S. Kelly reconveyed to Mrs. Meador the Andrews county land in consideration of $10 cash and the cancellation of the purchase-money notes for $21,000 therefore executed by Kelly on August 8, 1930, in favor of Mrs. Meador, as above shown.

At the time Wagner conveyed the San Antonio land to Mrs. Meador, he also sold and delivered to her various chattels in the apartment house and cottages on such land, the same consisting of household and kitchen furniture, fixtures, etc. The consideration for such sale, as recited in the bill of sale, was the execution by Mrs. Meador of six notes in Wagner's favor totaling $5,948.11. These are the same six notes referred to in the deed from Wagner to Mrs. Meador and secured by the deed of trust to the trustee, Church. Further securing the payment of such notes, Mrs. Meador gave Wagner a mortgage upon said chattels. These six notes secured by vendor's lien, deed of trust, and chattel mortgage, as aforesaid, were paid by Mrs. Meador prior to the sale of the Andrews county land

on June 2, 1931, by the trustee as above stated.

When the San Antonio land was reconveyed by Mrs. Meador to Wagner on June 5, 1931, the latter took possession of the chattels mentioned and still retains possession thereof.

It was shown that Wagner had paid to the state interest upon the purchase-money obligations against the Andrews county land; also taxes against the land; and had paid to Ed Rand the five unpaid notes held by Rand secured by lien upon the land as above mentioned.

The jury found:

1. That "Wagner, after May 7, 1931, and prior to June 2, 1931, represented to the plaintiff, Aver Meador, that if she would reconvey to him the San Antonio property that he would assume the debts against same and release his lien to her upon the Andrews County Property."

2. That Mrs. Meador relied upon such representation in deeding the San Antonio property to Wagner.

3. The reasonable annual rental value of the Andrews county land is $2,000.

4. The reasonable market value of the chattels in the cottages and apartment house on June 5, 1931, was $3,000.

The judgment contains recitals to the effect that the court was of the opinion the plaintiff should recover the land, but in order to obtain such relief she should be required to do equity by paying defendant certain sums expended by him, later itemized, amounting to $10,346.10, and that the chattels should be the property of the defendant and defendant should cancel all of his debts and liens against the lands and all other relief sought by either of the parties should be denied. Accordingly, it was adjudged and decreed by the court, substantially as follows: That the plaintiff, upon payment into the registry of the court of the sum of $10,346.10 for the benefit of Wagner, should recover the title and possession of the land; that the chattels be and remain the property of the defendant, free and clear of any claim of the plaintiff; that the plaintiff immediately pay into the registry of the court said sum of $10,346.10, which should be paid to the defendant, and upon such payment the trustee's deed of June 2, 1931, be set aside, canceled, and held for naught. It appearing, however, that plaintiff failed and refused to pay said sum of money, it was ordered and decreed that the trustee's deed be and remain in full force and effect and defendant be quieted in his title and pos-

session of the land. It was further ordered that all relief not specifically granted or denied be in all things denied to each of the parties. The items composing the said sum of $10,346.10 are itemized in the judgment as follows:

| | | |
|---|---|---|
| 6-5-31 | State interest | $ 935.14 |
| | Interest at 10% to 3-30-33 | 169.87 |
| 7-8-31 | Payment to Ed Rand | 4,075.78 |
| | Interest at 10% to 3-30-33 | 704.15 |
| 10-30-31 | School Land interest | 926.64 |
| | Interest at 10% to 3-30-33 | 131.26 |
| 1-30-32 | Taxes | 671.05 |
| | Interest at 10% to 3-30-33 | 78.23 |
| 7-1-32 | Interest to Ed Rand | 480 00 |
| | Interest at 10% to 3-30-33 | 32.00 |
| 9-15-32 | Payment to Ed Rand | 2,032.89 |
| | Interest at 10% to 3-30-33 | 109.04 |
| | Total | $10,346.10 |

## Opinion.

■ The validity of the sale and conveyance by the trustee, Church, is here assailed upon various grounds, one being that its invalidity is established by the first and second findings.

The notices of sale were posted May 7, and Mrs. Meador was notified of the proposed sale. Subsequent to May 7, and some time before June 2d, the date of the sale, Mrs. Meador saw Wagner. According to her testimony, Wagner made the representations and promises found by the jury. Wagner admitted that at the time the sale was made he expected Mrs. Meador to reconvey the San Antonio property.

Defendant in error asserts the agreement in question was executory and within the statute of frauds. Disposing of this suggestion, we quote from Southern B. & L. Ass'n v. Jackson (Tex. Civ. App.) 290 S. W. 266, 268: "Assuming that the oral agreement of January 2, 1922, was obnoxious to this statute when it was entered into, yet after appellee had performed all that the agreement contemplated that he should perform and appellant had received the entire benefit of appellee's performance, can said statute now be invoked to relieve appellant from the performance of his part of the contract by the execution of the release? We do not think so. As we understand the law, if an agreement when first made comes within the purview of subdivision 4, art. 3995, that statute has no application, after one party to the agreement has fully performed the obligations imposed upon him by the terms of such agreement and the other party has received and is enjoying the benefits of such performance." To the same effect, see: Belcher v. Schmidt, 62 Tex. Civ. App. 411, 132 S. W. 833; Dockery v. Thorne (Tex. Civ.

App.) 135 S. W. 593; Christopher v. Davis (Tex. Civ. App.) 284 S. W. 253; Wingart v. Baxter (Tex. Civ. App.) 30 S.W.(2d) 522; Johnson v. Neeley (Tex. Civ. App.) 36 S.W.(2d) 799.

On June 5, 1931, when called upon to reconvey the San Antonio property, Mrs. Meador did so.

Wagner accepted the reconveyance and became legally bound to comply with his part of the agreement under the authorities above cited.

■ In this connection we are of the further opinion, and hold, that when such agreement was made it operated as a waiver by Wagner of his right to have the sale proceed in accordance with the notice previously given and implied an agreement to postpone the foreclosure sale; and that the sale made under such circumstances is voidable. Southern B. & L. Ass'n v. Jackson (Tex. Civ. App.) 290 S. W. 266.

The fact that before the sale Mrs. Meador had conveyed the land to Kelly is unimportant, because Mrs. Meador had the superior legal title by virtue of a vendor's lien expressly retained in her deed to Kelly securing the payment of Kelly's purchase-money notes and the land was later reconveyed to Mrs. Meador by Kelly in satisfaction of such notes.

Nor does the fact that she had pledged the Kelly notes to the Commercial Bank as collateral to secure a loan defeat her rights.

■ From what has been said it follows that upon the first and second findings Mrs. Meador should have recovered the land charged with the payment of such sums as may have been expended by Wagner and which may, in law or equity, be properly chargeable against the land.

The sums so expended are stated in the answer as follows:

"(a) Expenses of said sale, supplemental abstract, recording instrument and so forth, $104.85;

"(b) On June 5th, 1931, school land interest, $935.14;

"(c) July 8th, 1931, payment on principal to Ed. Rand $3,000.00, interest to Ed. Rand, $720.00, taxes for 1930 advanced by Ed. Rand, $342.10; interest on taxes advanced by Ed. Rand $13.68, or a total sum of $4,075.78;

"(d) October 30th, 1931, school land interest $926.64;

"(e) January 30th, 1932, taxes on lands $671.05;

"(f) July 1st, 1932, interest to Ed. Rand, $480.00;

"(g) September 15th, 1932, principal to Ed. Rand, $2,000.00; interest from July 1st, 1932, to date of payment, $32.89."

The evidence shows that the principal and interest notes held by Rand bear interest at the rate of 10 per cent. after maturity; that they were taken up by Wagner after maturity and transferred to him. Such transfer carried with it the lien of the deed of trust securing the payment of such notes. These payments are thus chargeable against the land as a lien under the original notes and deed of trust of July 1, 1927. These payments should bear interest at the rate of 10 per cent. per annum as provided in the notes. The point made by plaintiff in error that under the pleadings of defendant in error and evidence a lien cannot be thus established upon the original obligation is without merit.

■ As to the state interest item of $935.14 paid June 5, 1931, this was paid upon the date Mrs. Meador reconveyed the San Antonio property to Wagner. Upon that date it became incumbent upon Wagner to release to Mrs. Meador his lien upon the Andrews county land in accordance with his agreement. For this reason he cannot claim that he was authorized to make such payments under the terms of the deed of trust of August 29, 1929, charge the same to Mrs. Meador's account and that such payment is secured by such deed of trust. But we do not think he should be treated as a mere volunteer in making such payment. The obligation to the state was a first lien upon the land; the payment was made to protect the title; was made in evident good faith; and the payment inured to the benefit of Mrs. Meador.

Under the circumstances Wagner is entitled to invoke the equitable principle of subrogation and be subrogated to the lien of the state. Banks v. Cartwright (Tex. Civ. App.) 26 S.W.(2d) 708; Williams v. Daniel (Tex. Civ. App.) 30 S.W.(2d) 711; Minchew v. Hankins (Tex. Civ. App.) 278 S. W. 306; Harrison v. First Nat. Bank (Tex. Com. App.) 238 S. W. 209.

The same is true of the payment of interest to the state of $926.64, made October 30, 1931, and the tax payment of $671.05, made January 30, 1932.

These items should bear interest at the rate of 6 per cent. per annum.

The defendant in error cross-assigns error to the refusal of the court to allow the

amount of the Barnes notes as a charge against the land. This presents no error because under the agreement between the parties Wagner was to release his lien upon the Andrews county land upon the reconveyance of the San Antonio property. The lien of the Barnes note was one of the liens embraced within such agreement.

■ The foreclosure sale being invalid and possession having been wrongfully taken by Wagner thereunder, he is accountable to Mrs. Meador for rents. See note in 46 A. L. R. 132 at page 143; Stallings v. Thomas, 55 Ark. 326, 18 S. W. 184.

However, Mrs. Meador was not entitled to possession until April 20, 1932, when Kelly reconveyed the land to her. Wagner is accountable only for the rents from that date.

■■ Mrs. Meador also claims she is entitled to set off the value of the chattels in the San Antonio apartment house and cottages. She alleges this property to be hers and was by Wagner converted to his own use and benefit on June 5, 1931, when she reconveyed the San Antonio land. Wagner testified he took possession of the property upon the date stated, was using and had appropriated the same to his own use and benefit. If his conversion was wrongful, he is accountable for the property's value.

The only issue submitted respecting the alleged conversion was the value of the property.

When the San Antonio land was reconveyed, Mrs. Meador did not give a bill of sale to the chattels, but she voluntarily delivered possession thereof to Wagner. From this and other facts it may be inferred she intended to pass title to such chattels.

In the state of the evidence it was an issue of fact whether Wagner had wrongfully converted the chattels. The burden was upon Mrs. Meador to establish a wrongful conversion. No issue with respect thereto was submitted and none requested to be submitted by her. She is therefore presumed to have waived such issue and ground of set-off. Ormsby v. Ratcliffe, 117 Tex. 242, 1 S. W.(2d) 1084.

We do not concur in the view of the plaintiff in error that Wagner admits a conversion for which he is liable.

He admitted in his testimony that he took possession of the property, had been using it ever since, and had appropriated same to his use and own benefit, but this does not establish an unlawful conversion as a matter of law in view of the other facts and circumstances reflected by the record.

■ There is no pleading, however, to support the affirmative relief granted Wagner by the court below in decreeing such chattels to be his property, clear of any claim by Mrs. Meador. In the state of the pleadings the court could do no more than to deny her the set-off claimed in that connection.

In view of the retrial we will also rule upon a contention by the defendant in error respecting his liability as for conversion of the chattels in the apartment house and cottages.

When Mrs. Meador reconveyed the San Antonio lots, she delivered possession to Wagner. The chattels were in the houses and he thus came into possession lawfully. If he did not become the owner thereof, he became a gratuitous bailee of the chattels. No demand for the return of the same has been made by Mrs. Meador.

Wagner presents the proposition that, since he came into possession of the chattels lawfully, he cannot be held liable as for conversion in the absence of demand by Mrs. Meador and refusal by him to deliver.

■ The general rule is that one who has come into the possession of property lawfully cannot be held liable as for conversion in the absence of demand and refusal to deliver. San Antonio & A. P. R. Co. v. Smith (Tex. Civ. App.) 171 S. W. 282. Such rule, however, is not without exception. A bailee who asserts title hostile to his bailor, and wrongfully appropriates the property to his own use and benefit, is guilty of an independent act of conversion which renders him liable without previous demand by his bailor and refusal to deliver. Demand and refusal ordinarily is merely evidence of conversion establishing a prima facie case. 65 C. J. title Trover and Conversion, §§ 56, 61, and 67; 3 R. C. L. title Bailments, § 40.

■ The court erred in denying the plaintiff recovery of the land and adjudging same to the defendant because of the plaintiff's failure to immediately pay into the registry of the court for the benefit of Wagner said sum of $10,346.10.

Wagner simply has a lien upon the land to secure the disbursements made by him.

The trustee's deed under the findings is voidable, and Mrs. Meador should have recovered the land charged with the payment of the items expended by Wagner as above stated.

The defendant in its answer with respect to such charges alleged: "But that this defendant does not seek at the present time to foreclose the lien upon said land and premises securing said indebtedness and does not waive his right to foreclose under the terms of said deed of trust hereto attached and marked Exhibit 'A' or said deed of trust held by Ed. Rand, but says that he should be permitted in any event to make another sale under the terms of said deeds of trust to secure all of said indebtedness because various parties at interest and owning certain rights, titles, claims and interest in said lands are not parties to this suit and their rights in said premises cannot be adjudicated in a foreclosure of the defendant's lien herein."

In this condition of defendant's pleading his lien cannot be foreclosed. The lien can only be established against the land without prejudice to the right of defendant to later foreclose and have the land sold in payment of his lien.

For the errors indicated the judgment will be reversed, but in the state of the pleadings and evidence we think the ends of justice will be best served by remanding for retrial rather than here rendering.

In view of retrial we will indicate our views upon two other grounds presented in the brief of the plaintiff in error attacking the validity of the trustee's sale.

One of the grounds is that the sale was made without request therefor by Wagner, the beneficiary of the deed of trust. This is without merit. The evidence shows Wagner did request the trustee to make the sale.

The other ground is that the deed of trust did not authorize the trustee to sell the land upon default in the payment of the two notes in favor of Barnes.

Mrs. Meador pleaded her title specially, and she is confined to the facts therein pleaded in avoidance of the trustee's sale. Joyner v. Johnson, 84 Tex. 465, 19 S. W. 522. She did not attack the sale upon this ground. But she raises the question here, and it will doubtless be properly raised upon the retrial. It is therefore proper to rule upon the same.

The deed of trust is lengthy, and it would uselessly incumber this opinion to quote the same in whole. It plainly shows that the conveyance was in trust to secure the payment of the six purchase money notes executed by Mrs. Meador and the notes assumed by her. It created a lien upon the Andrews county land to secure the payment of all of these notes. It conferred upon the trustee power to sell upon default in the payment of the notes executed by Mrs. Meador.

Near the end of the instrument it stipulates that the lien is inferior and subject to the state debt against the land, and the deed of trust executed by the grantor to secure the payment of the five unpaid notes originally in favor of Floyd Shock and then owned by Rand; it then authorized the beneficiary to pay the interest upon the state debt and to pay the indebtedness of Rand, in the event the grantor failed to do so, and charge such payments to the account of the grantor, "and in either event, in addition to the rights hereinabove set out, the said Adolph Wagner, beneficiary hereunder, shall have the option of declaring the notes executed by the Grantor due and payable and even though said notes have been paid, shall have the option of requiring the trustee to execute the powers hereby conferred and to apply the proceeds of said sale to the indebtedness assumed by the Grantor."

The power of sale last conferred was effective only in the event Mrs. Meador had defaulted in the payment of the Rand indebtedness and the interest due the state and same had been paid by Wagner. Prior to the sale Mrs. Meador had paid the six notes executed by her, and at the time of the sale no payment had been made by Wagner of the interest due the state, nor had he paid the notes held by Rand. Such payments were made by Wagner after the sale by the trustee.

The deed of trust, as we view it, authorized a sale by the trustee in two events only, viz.:

1. Upon default in the payment of the six notes executed by Mrs. Meador.

2. In the event Mrs. Meador was in default upon the obligations to the state and Rand and Wagner had paid the same.

Neither of these contingencies had arisen at the time of the sale, and the trustee did not assume to sell by virtue of any such default. He undertook to sell because of default in the payment of the Barnes notes.

In this connection we quote Perry on Trusts (6th Ed.) § 602p: "It must be constantly borne in mind that the power of sale given in the deed or mortgage must be strictly followed in all its details. The power of transferring the property of one man to another must be followed strictly, literally and precisely. Such a power admits of no substitution and of no equivalent, even in unimportant details."

To the same effect, see 19 R. C. L. pp. 587 and 592, at §§ 402 and 407; Michael v. Crawford, 108 Tex. 352, 193 S. W. 1070; Platte v.

Securities Inv. Co. (Tex. Com. App.) 55 S.W. (2d) 551; Smith v. Allbright (Tex. Civ. App.) 261 S. W. 461.

 We also refer to the rule that a power of attorney authorizing the sale of land is to be strictly construed and that general expressions of authority in such instruments are treated as referable to the specific acts expressly authorized. 2 Tex. Jur. title Agency, § 32; Gray v. Powell (Tex. Civ. App.) 282 S. W. 631; Frost v. Erath Cattle Co., 81 Tex. 509, 17 S. W. 52, 26 Am. St. Rep. 831; Skirvin v. O'Brien, 43 Tex. Ciy. App. 1, 95 S. W. 696.

We regard the trustee's sale as void for want of authority in the trustee to make a sale because of default in the payment of the Barnes notes.

Reversed and remanded.