TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-98-00403-CV







Robert E. James, Alta M. James, Clem T. York, Sharon G. York, David R. Nokes,


Rosemary A. Nokes, Jesse Kennedy, Jean Kennedy, Bill Sorrells, Linda Sorrells,


Ray Nelson, Gail Nelson, John Ramming, Johnny D. Reich, Patricia Reich, and


Cosmo F. Guido, Independent Executor of the Estate


 of Louis F. Sirianni, Appellants



v.



Peggy G. Townsend, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT


NO. 96-11022-A, HONORABLE SUE BARTON LYKES, JUDGE PRESIDING








 Robert E. James and other property owners (1) ("appellants") in the Point Pedernales
Subdivision in Travis County appeal from a summary judgment recovered by appellee Peggy G.
Townsend on her counterclaim against appellants for declaratory judgment that she owns a certain
tract of land within the subdivision. We will reverse the judgment and remand the cause to the
trial court.


THE CONTROVERSY


 Townsend claims by prescriptive title the shaded area (the "disputed property")
shown on the drawing in Exhibit A that accompanies our opinion. The disputed property is
waterfront property that lies along the Pedernales River where it joins Lake Travis. Appellants
initiated the present litigation after receiving from Townsend a letter in which she made known
her claim to title and complained of appellants' interference with her possession by their activities
on the disputed property.

 Together with other pleas in her original answer, Townsend counterclaimed against
appellants for a declaratory judgment "that she is the sole owner and title holder of the [disputed
property], and that [appellants] have no rights or interests related to the [disputed property]." On
Townsend's motion, the trial court ordered a partial summary judgment that she recover from
appellants "title and possession of the [disputed property]." Cf. Tex. R. Civ. P. 804. The
judgment became final after the trial court ordered that Townsend recover from appellants $14,000
in attorney's fees and severed her counterclaim from appellants' causes of action. (2) This appeal
ensued. 


DISCUSSION AND HOLDINGS


 Among other issues and points presented on appeal, appellants contend summary
judgment was precluded because the record does not establish as a matter of law that Townsend
satisfied each and every element of either the five or ten-year statutes of limitation alleged in her
counterclaim and urged in her motion for summary judgment.

 The five-year statute requires that the disseisor cultivate, use, or enjoy the property,
pay the applicable taxes thereon, and "claim the property under a duly registered deed." Tex.
Civ. Prac. & Rem. Code Ann. § 16.025 (West 1986). The ten-year statute requires that the
disseisor cultivate, use, or enjoy the property; where peaceable possession is "held under a duly
registered deed . . . that fixes the boundaries of the possessor's claim," the claim "extends to the
boundaries specified in the instrument." Tex. Civ. Prac. & Rem. Code Ann. § 16.026(a), (c)
(West 1986 & Supp. 1999). See Pinchback v. Hockless, 158 S.W.2d 997, 1000-01 (Tex. 1942);
2 C.J.S. Adverse Possession § 108, at 799 (1972).


I


 The summary judgment record contains documents tracing Townsend's chain of title
back to Louis F. Sirianni, who laid out the subdivision and sold lots in reference to the recorded
plat. Sirianni conveyed to Charlie C. Tawater and Lois G. Tawater, in a deed dated January 14,
1970, lot twenty-four and "all of the property lying between" lots twenty-two and twenty-four,
together with an easement giving free and uninterrupted use of "a certain strip of land described
in the plat . . . as 'Private Easement.'"

 In a deed dated May 24, 1974, the Tawaters conveyed lot twenty-four to Stanley
J. Hilbig and Joan S. Hilbig, together with "portions lying between" lots twenty-two and twenty-four.

 In a deed dated August 29, 1977, the Hilbigs conveyed to Townsend and her now-deceased husband property described as follows:

 1.  Lot twenty-four together with

 2.  the land lying between lots twenty-two and twenty-four according to the map
or plat of record in the plat records of Travis County;

 3.  the property conveyed being all of that tract of land conveyed by the Tawaters
to the Hilbigs as recorded in the Travis County deed records; and

 4.  "the tract of land hereby conveyed being more particularly described by metes
and bounds" in field notes attached to the Hilbigs' deed to the Townsends and incorporated
therein. The field notes encompass both lot twenty-four and the disputed property shown in
Exhibit A.

 To summarize, title to lot twenty-four passed from Sirianni to the Tawaters, to the
Hilbigs, and finally to the Townsends. Townsend's title to lot twenty-four is not disputed. The
parties' dispute relates to the other property referred to in the above-described conveyances. In
Sirianni's deed to the Tawaters, that property is described as "all of the property lying between"
lots twenty-two and twenty-four. The Tawaters conveyed to the Hilbigs unspecified "portions"
of that property. The Hilbigs, nevertheless, purported to convey to the Townsends land lying
between lots twenty-two and twenty-four and adjacent land lying south, east, and west of lot
twenty-four as shown on our drawing. Townsend claims title to the adjacent land (the disputed
property) by adverse possession. (3)

 Under the summary judgment record, title to the disputed property never passed
from Sirianni unless he and the Tawaters intended as much by the reference in Sirianni's deed to
"all of the property lying between" lots twenty-two and twenty-four. The summary judgment
record is silent as to their intentions in that regard. Only a small segment of property may be said
to lie "between" lots twenty-two and twenty-four in the ordinary sense of that word. And the
affidavit of the executor of Sirianni's estate declares that the executor had reviewed the records
of the estate and "it appears that the Disputed Property . . . has never been conveyed to any
person." 

 For the foregoing reasons, it cannot be said as a matter of law that Townsend
acquired title to the disputed property apart from her claim of adverse possession. The fact that
title to the disputed property was not shown to have passed from Sirianni, as a matter of law,
supports appellants' allegations that they entered into possession of the disputed property under
Sirianni's title, using the property in various ways in common with all the property owners in the
subdivision, as described below. We turn then to Townsend's claim of a prescriptive title based
on the five and ten-year statutes of limitation.

II


 Possession under a claim of adverse right must be "exclusive" in order to ripen into
a title, meaning "that the disseisor must show an exclusive dominion over the land and an
appropriation of it to his own use and benefit"; and the period of limitation runs "from the time
such exclusive occupancy begins, whether the land be enclosed or not." W. T. Carter & Bro. v.
Holmes, 113 S.W.2d 1225, 1226 (Tex. 1938); see also Rick v. Grubbs, 214 S.W.2d 925, 927
(Tex. 1948). We will examine the summary judgment record to determine whether it establishes
as a matter of law that Townsend had exclusive possession of the disputed property for either five
or ten years.


Townsend's affidavit

 Townsend and her deceased husband claim under a 1977 deed; nothing in the record
suggests that they entered into possession of the disputed property before that time. Her affidavit
declares that she and her husband engaged in the following activities on the disputed property: 
storing firewood, terracing and controlling erosion, planting and tending to grass, shrubs, and
trees; constructing rustic steps leading to the water; attaching a boat dock to the disputed property;
repairing, refurbishing, and using continuously a pump house located on the disputed property;
and walking, swimming, fishing, and gathering driftwood. On at least two occasions in the late
1970s or early 1980s, the Townsends stopped appellant Clem York's children from riding
motorbikes and discharging firearms on the disputed property. In 1983, appellant Gail Nelson
asked the Townsends if she could take from the disputed property a few loads of soil; she took
more than fifty loads before the Townsends interfered. A group of neighbors arrived (evidently
at the Townsends' home) to complain. The Townsends called the sheriff. After examining the
Townsends' deed, the sheriff said the disputed property belonged to the Townsends and the
neighbors could not take the soil without the Townsends' permission.


Appellants' affidavits

 Appellants filed numerous affidavits in opposition to Townsend's motion for
summary judgment. Appellant Clem T. York swore he had lived twenty-five years on his
subdivision lot and had never seen Townsend or her husband on the disputed property, save for
one occasion when he saw her and another person walk down the boat-ramp road (the "Private
Easement" shown on our drawing) about fifteen or twenty yards. York had never seen the
Townsends swimming, walking, gathering firewood, or maintaining the disputed property in any
way. After the Townsends purchased lot twenty-four in 1977, there have been at least two boat
docks moored to the disputed property from time to time. Neither of the Townsends had made
York aware of their claim of title to the disputed property until Townsend's letter to York dated
July 7, 1995, and neither had ever prevented York's children or their guests from riding
motorbikes or discharging firearms on the disputed property. York's family and guests have used
the disputed property "many [sic] number of times after" an incident in the late 1970s or early
1980s when Townsend's deceased husband told York's children to leave the disputed property. 
York responded by going to the Townsends' home where he told Mr. Townsend that York's
children had every right to be on the disputed property. Since that episode, neither of the
Townsends ever asked York to leave the disputed property. York first began using the disputed
property in 1974 when he left his boat moored there overnight on weekends. He cleared branches,
picked up debris, and worked to make passable the road on the disputed property. Between 1974
and 1984, York and his family periodically swam and held picnics on the disputed property,
placed and emptied trash cans thereon, built bonfires, erected targets and discharged firearms on
the disputed property, fished, cleared driftwood, discharged fireworks with other families on
Independence Day, trimmed trees, picked up fishing lures, and rode motorcycles "up and down
the road and all along the" disputed property when the water was low enough to allow such
activity. York built and repaired several boat docks on the disputed property over the years since
1974, and saw many other property owners do the same. And since that year, he had often seen
other families swimming, sunbathing, picnicking, and fishing on the disputed property. He had
never seen any signs posted on the disputed property forbidding entry.

 The affidavits of other property owners verify and repeat much of the information
set forth in York's affidavit. Appellant Jesse Kennedy swore that after he and his wife purchased
their subdivision property in 1969, he had never "seen any terracing or other steps taken by" the
Townsends on the disputed property--that he and other property owners had taken the only steps
toward erosion control and maintenance on the disputed property. The only firewood the
Townsends had stored had been in front of their house on lot twenty-four. The rustic steps 
mentioned in Townsend's affidavit were built before the Kennedys purchased their lot in 1969,
several years before the Townsends purchased lot twenty-four in 1977. Since 1969, there have
been as many as four boat docks on the disputed property, three on the Lake Travis cove side and
one on the Pedernales River side of the disputed property. Kennedy had never seen the
Townsends on the disputed property.

 Appellant Ray Nelson's affidavit described similar activities and, in addition,
explained the May 1984 episode involving several families removing soil from the disputed
property. On that occasion, Townsend's husband told Nelson and other property owners that the
dump trucks were creating a lot of dust in the very dry conditions then existing, aggravating
Townsend's allergies and annoying the Townsends. The Townsends called the sheriff who told
them he lacked authority to stop the neighbors from removing the soil. The sheriff requested,
however, that the neighbors not remove the soil "at this time due to the dust and noise." The
sheriff suggested, in addition, that the dispute was a civil matter that should be settled in court. 
Appellant Gail Nelson's affidavit verified this version of the episode and described various uses
made of the disputed property by the Nelsons and other property owners after 1977, when the
Nelsons purchased their subdivision lot.

 We need not summarize the remaining affidavits filed by other appellants in
opposition to Townsend's motion for summary judgment; they repeat most of the foregoing as
eyewitness accounts, refuting assertions in Townsend's affidavit and relating the affiants' own use
and enjoyment of the disputed property over the years. Townsend argues that appellants' uses
were confined to the easement on the disputed property, but appellants' affidavits explicitly aver
that their use and enjoyment extended to areas of the disputed property outside the easement.

 We conclude that the summary judgment record demonstrates a genuine issue of
material fact relative to the element of exclusive possession. We should, however, refer to the 
theory of constructive possession argued vigorously by Townsend.


III


 Townsend relies upon her undisputed possession of lot twenty-four, which lies
within the boundaries of the metes-and-bounds description of her deed from the Hilbigs, coupled
with the constructive-possession doctrine set forth in section 16.026(c) of the Texas Civil Practice
and Remedies Code. (4) See Tex. Civ. Prac. & Rem. Code Ann. § 16.026(c) (West Supp. 1999). 
She argues that under that doctrine, her entry into possession of lot twenty-four gave her
constructive possession of the whole of the land within the metes-and-bounds description. See
Caver v. Liverman, 185 S.W.2d 417, 419 (Tex. 1945); Sun Operating Ltd. Partnership v.
Oatman, 911 S.W.2d 749, 758 (Tex. App.--San Antonio 1995, writ denied). We believe,
however, that the summary judgment record does not establish as a matter of law her title under
the constructive-possession doctrine.

 "The main purpose of color of title is not to show an actual grant of land or any
interest therein, but to designate the boundary of the possessor's claim thereto." 5 Thompson on
Real Property § 2545, at 618 (1979). The doctrine of constructive possession is subject to two
important qualifications, among others. The first provides that "actual possession of the rightful
owner overcomes the constructive possession of a party holding under color of title and limits the
latters' possession to that land actually held." Id.; see Howell v. Garlington, 290 S.W. 269, 271
(Tex. Civ. App.--Beaumont 1925, no writ). The appellants' affidavits, which we must take as
true, show continuous entry upon and use of the disputed property by appellants and other
subdivision property owners under Sirianni as the rightful owner; their entry and use began before
the Townsends acquired color of title by their deed from the Hilbigs and continued to within five
years of the date appellants filed suit on September 12, 1996. Nothing in the summary judgment
record defeats as a matter of law appellants' numerous affidavits showing such entry and use by
appellants and other subdivision owners. Their actual possession under the rightful owner
(presumably Sirianni) defeats any claim of constructive possession and limits Townsend's claim
of prescriptive title to the land actually held.

 In addition, "to acquire adverse title by constructive possession, the owner of the
land must have notice of the claim of title, either by actual knowledge or through notice implied
by law." 5 Thompson, supra, at 617. The summary judgment record does not establish as a
matter of law that Sirianni or any other appellant had actual knowledge of Townsend's claim more
than five years before suit was brought. Were they given constructive notice by the Townsends'
recording their deed on September 12, 1977? See Tex. Prop. Code Ann. § 13.001, .002 (West
1984 & Supp. 1998). Six of the appellants (Sirianni, Reich, the Yorks, and the Kennedys)
acquired their properties before the Townsends. Constructive notice under the foregoing statutes
does not apply to those appellants--the Townsends' deed is not in their chain of title because it was
recorded after their acquisition of title. See Leonard v. Benford Lumber Co., 216 S.W. 382, 384
(Tex. 1919). Like the Townsends, four of the appellants (the Nelsons and the Jameses) acquired
their properties in 1977, but the record does not establish as a matter of law that such appellants
acquired their properties after the Townsends recorded their deed. The remaining appellants (the
Nokeses, Rammings, and Sorrells) filed suit within five years of acquiring their properties.

 For the foregoing reasons, Townsend did not establish as a matter of law a
prescriptive title under the doctrine of constructive possession.

 We hold the summary judgment record will not sustain judgment as a matter of law
on Townsend's claim of title to the disputed property. Accordingly, we reverse the judgment
below and remand the cause to the trial court.



 

 Marilyn Aboussie, Chief Justice

Before Chief Justice Aboussie, Justices Kidd and Powers*

Reversed and Remanded

Filed: April 8, 1999

Do Not Publish





* Before John E. Powers, Senior Justice (retired), Third Court of Appeals, sitting by
assignment. See Tex. Gov't Code Ann. § 74.003(b) (West 1998).

1. The appellants, in addition to James, are Alta M. James, Clem T. York, Sharon G. York,
David R. Nokes, Rosemary A. Nokes, Jesse Kennedy, Jean Kennedy, Bill Sorrells, Linda
Sorrells, Ray Nelson, Gail Nelson, John Ramming, Johnny D. Reich, Patricia Reich, and Cosmo
F. Guido in his capacity as independent executor of the Estate of Louis F. Sirianni.
2. The remaining causes of action pertain to the easement shown in the drawing that
accompanies our opinion.
3. In Exhibit A, we have left unshaded lot twenty-four and a small segment of land lying
"between" lots twenty-two and twenty-four. Both lot twenty-four and the small segment are
within the metes-and-bounds description in Townsend's deed but the record is not clear whether
the parties' dispute extends to the small segment. Nor does the record show exactly where the
boundary between the shaded and unshaded parts lies. In our drawing we have simply copied the
parties' similar drawings.
4. Townsend argues that the doctrine of constructive possession applies as well to the five-year
statute, albeit under common-law principles. For purposes of this appeal, we assume that to be
the case without deciding the matter.


igs and continued to within five
years of the date appellants filed suit on September 12, 1996. Nothing in the summary judgment
record defeats as a matter of law appellants' numerous affidavits showing such entry and use by
appellants and other subdivision owners. Their actual possession under the rightful owner
(presumably Sirianni) defeats any claim of constructive possession and limits Townsend's claim
of prescriptive title to the land actually held.

 In addition, "to acquire adverse title by constructive possession, the owner of the
land must have notice of the claim of title, either by actual knowledge or through notice implied
by law." 5 Thompson, supra, at 617. The summary judgment record does not establish as a
matter of law that Sirianni or any other appellant had actual knowledge of Townsend's claim more
than five years before suit was brought. Were they given constructive notice by the Townsends'
recording their deed on September 12, 1977? See Tex. Prop. Code Ann. § 13.001, .002 (West
1984 & Supp. 1998). Six of the appellants (Sirianni, Reich, the Yorks, and the Kennedys)
acquired their properties before the Townsends. Constructive notice under the foregoing statutes
does not apply to those appellants--the Townsends' deed is not in their chain of title because it was
recorded after their acquisition of title. See Leonard v. Benford Lumber Co., 216 S.W. 382, 384
(Tex. 1919). Like the Townsends, four of the appellants (the Nelsons and the Jameses) acquired
their properties in 1977, but the record does not establish as a matter of law that such appellants
acquired their properties after the Townsends recorded their deed. The remaining appellants (the
Nokeses, Rammings, and Sorrells) filed suit within five years of acquiring their properties.

 For the foregoing reasons, Townsend did not establish as a matter of law a
prescriptive title under the doctrine of constructive possession.

 We hold the summary judgment record will not sustain judgment as a matter of law
on Townsend's claim of title to the disputed property. Accordingly, we reverse the judgment
below and remand the cause to the trial court.



 

 Marilyn Aboussie, Chief Justice

Before Chief Justice Aboussie, Justices Kidd and Powers*

Reversed and Remanded

Filed: April 8, 1999

Do Not Publish





* Before John E. Powers, Senior Justice (retired), Third Court of Appeals, sitting by
assignment. See Tex. Gov't Code Ann. § 74.003(b) (West 1998).

1. The appellants, in addition to James, are Alta M. James, Clem T. York, Sharon G. York,
David R. Nokes, Rosemary A. Nokes, Jesse Kennedy, Jean Kennedy, Bill Sorrells, Linda
Sorrells, Ray Nelson, Gail Nelson, John Ramming, Johnny D. Reich, Patricia Reich, and Cosmo
F. Guido in his capacity as independent executor of the Estate of Louis F. Sirianni.
2. The remaining causes of action pertain to the easement shown in the drawing that
accompanies our opinion.
3. In Exhibit A, we have left unshaded lot twenty-four and a small segment of land lying
"between" lots twenty-two and twenty-four. Both lot twenty-four and the small segment are
within the metes-and-bounds description in Townsend's deed but the record is not clear whether
the parties' dispute extends to the small segment. Nor